25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Ray GREEN, Defendant-Appellant.
 No. 93-1284.
 United States Court of Appeals, Tenth Circuit.
 May 17, 1994.
 
 Before TACHA and EBEL, Circuit Judges, and SAM*, District Judge.
 ORDER AND JUDGMENT**
 SAM, District Judge.
 I. INTRODUCTION
 This is an appeal from the judgment of the United States District Court for the District of Colorado. In November of 1992, appellant/defendant Kenneth Ray Green ("Defendant") was indicted for unlawful distribution of cocaine base (crack cocaine), unlawful possession with intent to distribute more than five grams of cocaine base (crack cocaine), and for using or carrying four firearms in relation to a drug trafficking crime. A pre-trial motion to suppress was denied. After a jury trial, Defendant was found guilty as to Count II of the indictment, unlawful possession with intent to distribute cocaine, but not guilty on Counts I and III of the indictment. At sentencing on July 23, 1993, the trial court made a two-level upward adjustment for obstruction of justice and defendant was sentenced to 78 months imprisonment.
 
 II. FACTS
 
 1
 The Aurora, Colorado Police Department received complaints that a crack house was operating at 1757 Alton Street. On September 9, 1992, a confidential informant was wired with a concealed transmitting device and agreed to attempt to buy cocaine at that location. When he went to 1757 Alton Street, he was told he had the wrong house. The informant followed a female, whom he described as a "smoker" to 1753 Alton Street. There the informant encountered a male whom he had previously met during a temporary job. The informant could not remember the name of the individual, but told police that the car parked in front of 1753 Alton belonged to the man inside the apartment. The vehicle pointed out by the informant was registered to Defendant. However, the registration did not list the Alton Street address. The informant identified Defendant at trial as the man he dealt with at 1753 Alton. Upon entering the residence, the informant asked to buy a $20 rock. Defendant said he could not sell the informant a $20 rock because he only dealt in $50 quantities. The informant left, conferred with police who provided him with more money, and returned to 1753 Alton. The informant went into a back bedroom of the apartment with Defendant where he observed Defendant go to the closet, take out a gray flashlight, open the flashlight, and pour out some crack cocaine. While the informant was in the bedroom with Defendant, he saw what appeared to be a 9mm handgun and ammunition near the bed. Based upon the foregoing, Aurora police obtained a "no-knock" or "immediate entry" search warrant from a state court judge. The search warrant was executed at approximately 9:00 p.m. on September 10, 1992. A noise flash diversionary device was inserted through the bathroom window at the rear of the apartment by police officers. The Defendant and others exited out the front door of the residence after the device was activated. Upon execution of the search warrant, officers found four firearms and a gray Radio Shack flashlight which contained crack cocaine in the closet in the bedroom. A fingerprint found on the reflector of the flashlight matched that of Defendant. An airline ticket in the name of the Defendant was found in the bedroom. Keys removed from the pocket of Defendant when he was arrested fit the lock on the door to the bedroom at 1753 Alton where the drugs were found.
 
 
 2
 Defendant's testimony at trial was that, after he had damaged his car in an accident, he met a man named Charles who offered to repair the damage at a reduced rate. Defendant took his car to Charles for the repairs. Charles did not live at 1753 Alton Street, but lived elsewhere in the same building. One evening, Defendant and his girlfriend stopped by Alton Street to see if the car was ready. They waited in 1753 (Sal's apartment) for Charles to return. Defendant noticed a flashlight, which he believed to be one taken from his car. The flashlight would not operate and Defendant opened it up. Defendant had earlier met the informant at a party at the 1753 Alton address. On the day of the arrest, Defendant stated he was at 1753 Alton to wait for Charles. Sal gave Defendant some keys to give to Sal's girl friend when she returned.
 
 
 3
 The trial began on May 3, 1993 and continued through May 4, 1993. Jury deliberations began on the morning of May 5, 1993. The jury sent the judge a note with a question at approximately 2:52 p.m. and was excused for the day at 4:48 p.m. The jury returned on May 6, 1993, and resumed deliberations at 9:00 a.m. At approximately noon, the jury submitted a question to the judge, including a statement that they could not reach a verdict on Counts I and II. The court gave the jury an "Allen" supplemental jury instruction encouraging them to continue deliberations and to resolve the case if they could. At approximately 2:25 p.m. the jury notified the court that they had reached a verdict. Defendant was found not guilty as to Count I of the indictment, guilty as to Count II of the indictment, and not guilty as to Count III. Defendant was sentenced on July 23, 1993. Defendant was found to have a base level 28, which included a two-level enhancement for obstruction of justice. He was sentenced to 78 months imprisonment.
 
 III. DISCUSSION
 Allen Instruction
 
 4
 Defendant first contends that the trial court erred in giving an Allen instruction upon being advised by the jury that they could not reach a verdict. We make a "case by case examination to determine whether the taint of coercion was present." United States v. Porter, 881 F.2d 878, 888 (10th Cir.) (citing Munroe v. United States, 424 F.2d 243, 246 (10th Cir.1970)), cert. denied, 493 U.S. 944 (1989).
 
 
 5
 The purpose of an Allen instruction is to encourage a unanimous verdict. United States v. Smith, 857 F.2d 682, 683 (10th Cir.1988). We have urged courts to incorporate the Allen instruction into the body of original instructions given to the jury prior to deliberation. United States v. Blandin, 784 F.2d 1048, 1050 (10th Cir.1986); United States v. Butler, 904 F.2d 1482, 1488 (10th Cir.1990). However, the giving of an Allen charge after the jury has begun its deliberations is not per se error in this circuit. United States v. McKinney, 822 F.2d 946, 951 (10th Cir.1987); United States v. Hernandez-Garcia, 901 F.2d 875, 876 n. 2 (10th Cir.), cert. denied, 498 U.S. 844 (1990). The instruction submitted to the jury by the court in this case was patterned from one approved by this circuit. See Id. Factors to be considered in determining whether an Allen charge is coercive include "(1) The language of the instruction, (2) its incorporation with other instructions, and (3) the timing of the instruction...." United States v. Porter, 881 F.2d 878, 888 (10th Cir.), cert. denied, 493 U.S. 944 (1989).
 
 
 6
 Defendant speculates that the Allen instruction was coercive. However, there is no evidence that it was coercive. The instruction, in our view, is neither prejudicial nor coercive on its face. The instruction was given only after the jury informed the court that it was at an impasse and requested the trial court to instruct it. The instruction pointed out that no juror was expected to yield any conscientious conviction as to the evidence. Under similar circumstances, we have found no reversible error. United States v. Butler, 904 F.2d 1482 (10th Cir.1990). The fact that the jury returned a guilty verdict on only one of three counts further persuades us that the instruction was not coercive or prejudicial. We find no taint of coercion in the district court's giving of an Allen supplemental jury instruction, and, therefore, AFFIRM the district court on this issue.
 
 Enhancement for Obstruction of Justice
 
 7
 Defendant next contends that the trial court erred in enhancing his base level offense by two levels for obstruction of justice pursuant to U.S.S.G. Sec. 3C1.1. The district court's factual findings are accepted unless clearly erroneous and deference is given to the district court's application of the sentencing guidelines to the facts. United States v. Lowder, 5 F.3d 467, 470 (10th Cir.1993). The district court's interpretation of the Sentencing Guidelines is reviewed de novo. Id.
 
 
 8
 Defendant acknowledges that enhancement is warranted when a defendant has committed perjury. U.S.S.G. Sec. 3C1.1. However, Defendant contends that merely by testifying to his innocence and later being found guilty by the jury does not automatically warrant a finding of perjury. United States v. Markum, 4 F.3d 891, 897 (10th Cir.1993). Although at sentencing the district court found "that the defendant provided false testimony at trial and that it will make a two-level enhancement for the obstruction of justice", defendant urges that the district court failed to make findings as specific as those criticized in United States v. Markum, 4 F.3d 891 (10th Cir.1993).
 
 
 9
 The United States argues that the facts of this case are distinguishable from those in Markum, where the trial court found that the jury verdict was a repudiation of the testimony of the defendant. In contrast, it urges, the trial court here specifically found that Defendant gave false testimony, and did not use the jury verdict as a measure of whether the testimony was true or false.
 
 
 10
 The trial court's finding regarding Defendant's false testimony lacks the specificity required under our cases.
 
 
 11
 As the Supreme Court recognized in United States v. Grayson, 438 U.S. 41 ... (1978), the trial judge is entitled to observe the defendant at trial and consider in sentencing whether he or she gave perjured testimony. In United States v. Hansen, 964 F.2d 1017 (10th Cir.1992), however, we held that the trial court must specify which portions of defendant's testimony it considers to be false. Perjury is not sufficiently demonstrated when the district court states simply that the "defendant was not truthful and has not accepted responsibility." Id. at 1020.
 
 
 12
 United States v. Markum, 4 F.3d 891, 897 (10th Cir.1993) (emphasis added). In concluding that the trial court's findings were insufficient in Markum, this court stated: "The record does not contain a specific finding that, independent of the jury verdict, defendant committed perjury. Nor does it suggest what particular testimony the district court found to be untrue." Id. at 898. See also United States v. Lowder, 5 F.3d 467, 471 (10th Cir.1993) (Findings sufficient where "[a]t sentencing, the district court reviewed the contradictions between the testimony of Defendant and other witnesses, and determined that portions of Defendant's testimony were untruthful.") Based on the foregoing cases, the two-level enhancement for obstruction of justice under U.S.S.G. Sec. 3C1.1 was improper because the district court failed to specify which portions of Defendant's testimony that it found to be false. Accordingly, the case on this issue is REMANDED to the district court for entry of additional findings on the record or other proceedings consistent with this opinion.
 
 Motion to Suppress
 
 13
 Lastly, Defendant contends that the trial court erred in denying his motion to suppress evidence seized from the residence at 1753 Alton Street. Factual findings of the district court are accepted unless clearly erroneous, but the reasonableness of the search under the Fourth Amendment is reviewed de novo. United States v. Moland, 996 F.2d 259, 260 (10th Cir.1993) cert. denied, 114 S.Ct. 722 (1994).
 
 
 14
 Defendant contends that the search of the apartment violated his Fourth Amendment right to be free from unlawful search and seizure for two reasons: (1) There were not exigent circumstances to permit a no-knock entry; and (2) Use of a diversionary device constituted unreasonable force and danger in executing the warrant. Defendant also contends that the search is not protected by the Leon good faith exception to search warrants.[1] Defendant urges that there were no specific facts, such as the drugs were kept near the toilet or drain, for the officers to reasonably believe that the drugs would be destroyed if their presence was announced. Defendant also urges that officer safety was not a concern because there was no evidence that the informant had been threatened or that the gun would still be at the residence.
 
 
 15
 "Evidence seized by state officers will be suppressed in a federal prosecution if the search violated the Fourth Amendment." United States v. Moland, 996 F.2d 259, 260 (10th Cir.1993), cert. denied, 114 S.Ct. 722 (1994). For a "no knock" search to be reasonable, the court must find that the officers had particular reasons to believe that exigent circumstances existed. United States v. Stewart, 867 F.2d 581, 585 (10th Cir.1989). "The term 'exigent circumstances,' in conjunction with the entry of a residence during the execution of a search warrant, refers to those situations where 'the officers believe there is an emergency situation and ... their belief is objectively reasonable.' " Id. 867 F.2d at 584 (quoting United States v. Spinelli, 848 F.2d 26, 29 (2nd Cir.1988).
 
 
 16
 Here, the officers had specific, articulated reasons why exigent circumstances existed. They were informed that a gun had been seen in the apartment twenty-four hours earlier. The officers also were informed that cocaine was kept in a bedroom of the house. We are not persuaded by defendant's argument that there was no risk of the drugs being disposed of or no safety risk to the officers. Clearly, defendant could have disposed of the drugs within a matter of seconds after being alerted to the presence of the police. The presence of a firearm in the residence the day before also clearly constituted a safety concern for officers. As to Defendant's assertion regarding execution of the warrant, there is no evidence in the record to support Defendant's position that use of a "flash-bang" diversionary device in the present instance was excessive force rendering the search unreasonable. No one was injured. No children were present. Without some evidence to the contrary, we cannot say that the force was unreasonable in light of information known to officers. Finally, we find it unnecessary to reach Defendant's Leon good faith exception argument. The judgment of the district court in denying Defendant's motion to suppress is AFFIRMED.
 
 IV. CONCLUSION
 
 17
 The judgment of the district court is AFFIRMED in part and the case REMANDED for further findings or proceedings consistent with this opinion.
 
 
 
 *
 The Honorable David Sam, United States District Judge for the District of Utah, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Defendant argues that the search is not saved by the good faith exception to the exclusionary rule as formulated in United States v. Leon, 468 U.S. 897 (1984). Defendant contends that the affidavit in support of the search warrant does not support a good faith belief that exigent circumstances were present. Additionally, defendant urges that the violent manner of entry was not authorized by or even conveyed to the issuing magistrate