In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3317

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHNNIE C. COLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:11-CR-58-TLS—**Theresa L. Springmann**, *Judge.*

ARGUED MARCH 6, 2013—DECIDED APRIL 18, 2013

Before MANION, WOOD, and SYKES, *Circuit Judges*.

PER CURIAM. Johnnie Collins fled police officers by car and then by foot after he was stopped for speeding. An officer kicked Collins repeatedly and dosed him with pepper spray, but Collins did not stop resisting until another officer deployed his Taser. Afterward, the officers discovered a bag containing crack and powder cocaine that Collins had discarded during the foot chase, as well as a wad of cash in his pocket. After Collins

was charged with possession of crack and powder cocaine with intent to distribute, he moved to suppress the drugs and money on the principal ground that they were obtained through the use of excessive force. The district court denied the motion to suppress, explaining that under *United States v. Watson*, 558 F.3d 702, 705 (7th Cir. 2009), the use of excessive force during an arrest is not a basis for suppressing evidence. Moreover, the court reasoned, the drugs and money were not seized as a result of the alleged use of excessive force. On appeal Collins challenges this ruling, specifically arguing that we should overturn *Watson*. We reject his arguments and affirm the judgment.

## I. Background

The following account is drawn from the testimony of three Fort Wayne, Indiana police officers who testified at the hearing on Collins's motion to suppress. Collins did not introduce any evidence.

The discovery of the drugs and money was set in motion when Officer Stephen Ealing stopped Collins for speeding. Collins stepped out of his car, and when Ealing instructed him to get back inside, Collins sped away through red lights and stop signs in a residential neighborhood. Ealing gave chase but his lieutenant eventually ordered him to abandon his pursuit. At about the same time, Collins crashed into a stop sign. Collins then ran from the scene and, within a few seconds, threw a small bag into the bushes. Ealing pursued Collins on foot, and Collins repeatedly disregarded the officer's instructions to stop.

When Ealing finally caught up to him, Collins continued to resist. Trying to subdue him, Ealing elbowed him in the neck and back. Collins still did not submit, so Ealing discharged pepper spray in his face. A fight ensued; Collins swung at Ealing, who responded with more pepper spray and repeated kicks to the stomach and groin. Collins still resisted, ignoring commands to get on the ground.

At that point Officer Kenneth Johnson arrived and saw Collins fighting with Officer Ealing. Johnson announced that he possessed a Taser, but Collins would not surrender and get on the ground. Johnson then deployed the Taser, and Collins fell to the ground but still refused to put his hands behind his back. Only after Johnson deployed the Taser again were the officers able to gain control over Collins and handcuff him.

After the arrest the police officers retrieved the bag that Collins had thrown into the bushes during the foot chase. A field test was positive for cocaine, and later analysis would confirm that the bag contained 28.8 grams of powder cocaine and 44.8 grams of crack. The arresting officers searched Collins and discovered the money. Medics on the scene determined that Collins's vital signs were normal, and hospital staff later gave him a tetanus shot as a precaution.

Collins was indicted on one count of possession of crack with intent to distribute and one count of possession of powder cocaine with intent to distribute. He moved to suppress the drugs and money on the theory that this evidence was discovered only after he was

arrested through the use of excessive force. The district court denied the motion. Citing *Watson*, the court noted that the use of excessive force in making an arrest cannot be remedied by suppression of evidence. And even if suppression was an available remedy, the court continued, Collins would not be entitled to relief because he discarded the drugs *before* any force was applied and the money would have been seized during a search incident to arrest, negating any causal connection between the discovery of evidence and the use of force.

Collins later entered a conditional plea of guilty, reserving the right to challenge the suppression ruling on appeal. He was sentenced to 70 months' imprisonment.

## II. Analysis

On appeal Collins argues, through appointed counsel, that we should overrule *Watson*. Collins also filed a pro se brief in which he asserts that his former counsel was ineffective. According to Collins, the lawyer did not adequately present his contention that the police lacked probable cause to arrest him. That contention is not preserved by Collins's conditional guilty plea and, moreover, is foreclosed by the appellate waiver in his plea agreement.

Moving to the main claim on appeal, Collins concedes that his disagreement with *Watson* gets him nowhere unless there is a "causal nexus" between the use of force and the discovery of the drugs and money. He also ac-

knowledges the district court's conclusion that no causal connection exists because the drugs were abandoned before any force was applied and the money would have been discovered during a search incident to arrest. The flaw in the district court's reasoning, he argues, is in identifying "when the excessive force began." Relying on *Clark v. Thomas*, 505 F. Supp. 2d 884 (D. Kan. 2007), Collins insists that Officer Ealing subjected him to the use of force—indeed, *excessive* force—merely by giving chase on foot after the dispatcher had said to abandon the vehicular pursuit.

That theory is meritless, and without it Collins has no answer to the district court's causation analysis. A claim that excessive force was used by the police against a citizen is analyzed under the Fourth Amendment's prohibition of unreasonable seizures of the person, *see Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 705 (7th Cir. 2009), and Collins had not yet been seized at the point when he abandoned his drugs by tossing the bag into the bushes. No seizure occurs until force is applied or the suspect submits to the officer, and the moment of seizure does not relate back to an initial show of authority that was ignored. *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991); *United States v. Griffin*, 652 F.3d 793, 798, 800-01 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1124 (2012); *Marion*, 559 F.3d at 705. And *Clark v. Thomas* lends no help to Collins; that civil case was not about the exclusionary rule, and all it stands for is the unremarkable proposition that using a police car moving at high speed as a means of stopping an unarmed suspect who

is fleeing on foot raises a question of fact about the reasonableness of the force employed. *See* 505 F. Supp. 2d at 895-97. In fact, in addressing the plaintiff's Fourth Amendment claim, the court in that case assigned no significance to the fact that the officer had disregarded an instruction to abandon the car chase before he struck the plaintiff; the decision concerns the constitutional ramifications of *striking* the plaintiff, not chasing him. *See id.* at 895. Finally, it does not matter that Collins was seized previously during the brief traffic stop; "[a] seizure is a single act, and not a continuous fact," *Hodari D.*, 499 U.S. at 625, and the minute Collins fled from the scene of the traffic stop that brief period of custody ended, *see United States v. Baldwin,* 496 F.3d 215, 218 (2d Cir. 2007); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994).

In any event, the reasons Collins offers for revisiting *Watson* are unpersuasive. In *Watson* we noted that the exclusionary rule does not apply to every Fourth Amendment violation and concluded that evidence legally seized should not be suppressed based on the use of excessive force collateral to that seizure. 558 F.3d at 705. As support we cited *Hudson v. Michigan*, 547 U.S. 586, 598 (2006), which holds that exclusion is not an appropriate remedy for violations of the knock-and-announce rule, and *United States v. Ramirez*, 523 U.S. 65, 71 (1998), similarly rejecting the exclusionary rule as a remedy for "excessive or unnecessary destruction of property in the course of a search." We also reasoned that a suit for damages is the better remedy to address excessive force because a civil action is "better calibrated

to the actual harm done the defendant" than exclusion, which can impose great social costs. *Watson*, 558 F.3d at 705.

Collins insists that *Watson* is a minority position and that we should align ourselves with what he describes as the "judicial mainstream" represented by decisions in other circuits. But he is wrong in asserting that this circuit "stands alone in its absolute prohibition against the suppression of evidence seized as a result of excessive force." After *Watson* there has been no appellate decision holding that the exclusionary rule can serve as a remedy for excessive force collateral to a search or seizure. Collins cites only one case decided after *Watson*, but that decision, *United States v. Edwards*, 666 F.3d 877 (4th Cir. 2011), does not undermine *Watson*. *Edwards* vacated a district court's refusal to suppress evidence obtained through an unreasonable strip search of the defendant. 666 F.3d at 887. Thus, *Edwards* deals with an unreasonable seizure rather than excessive force collateral to a seizure. The three other decisions he cites predate *Watson*: *United States v. Ankeny*, 502 F.3d 829 (9th Cir. 2007); *United States v. Green*, 25 F.3d 1058, No. 93-1284, 1994 WL 201105 (10th Cir. May 17, 1994) (unpublished table decision); and *United States v. Caldwell*, 750 F.2d 341 (5th Cir. 1984). We explicitly addressed *Ankeny* in *Watson*. *See Watson*, 558 F.3d at 705. If there has been a pattern developing in other circuits on this issue, that pattern has been to implicitly agree with *Watson*. *See United States v. Garcia-Hernandez*, 659 F.3d 108, 113-14 (1st Cir. 2011) (rejecting claim that use of excessive force in executing search

warrant can provide basis for suppressing evidence seized during search); *United States v. Morales*, 385 F. App'x 165, 167 (3d Cir. 2010) (citing *Watson* in rejecting claim that excessive force used to effect *Terry* stop provided basis to suppress gun found during that stop). And this court has continued to follow *Watson*'s holding. *See Gutierrez-Berdin v. Holder*, 618 F.3d 647, 652 (7th Cir. 2010); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010).

Moreover, no opinion cited by Collins holds that the use of excessive force in conducting search or seizure requires suppression of the evidence seized. The decisions included in his brief suggest that possibility in dicta, but that is all. The Ninth Circuit never had to decide the issue in *Ankeny* because the court concluded there was no "causal nexus" between the evidence and the alleged excessive force. 502 F.3d at 837. Although the court noted that the "extent of the property damage" and the defendant's injury "weigh in favor of a conclusion of unreasonableness," *id.* at 836-37, nowhere does the court suggest it would have suppressed the evidence had it found that there was a causal connection between the evidence and the officers' use of force. To the contrary, the court discusses *Ramirez* and *Hudson* in noting that not every Fourth Amendment violation is remedied by exclusion. *Id.* at 835, 837. In *Caldwell* the Fifth Circuit similarly concluded that the evidence the defendant sought to have suppressed was not the fruit of any alleged unreasonable search and thus refused to address the constitutionality of the search, let alone whether exclusion would have been appro-

priate. 750 F.2d at 343. Neither did the Tenth Circuit reach the issue in *Green* because the court concluded that the defendant had not demonstrated that the officers used excessive force when they activated a "flash-bang" diversionary device in executing a search warrant. 1994 WL 201105, at *5.

What remains is the contention that the *Watson* panel wrongly concluded that civil remedies are adequate to the use of excessive force by police. Collins has nothing new to say on the subject; he simply disagrees with how the case was decided, but that is not a sound reason for overturning the decision. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 864 (1992); *United States v. Mitchell,* 635 F.3d 990, 993 (7th Cir.), *cert. denied,* 132 S. Ct. 257 (2011); *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005).

AFFIRMED.