16 S.W.3d 551 (2000)
STATE of Arkansas
v.
Kenneth Andrew SULLIVAN.
No. CR 99-1140.
Supreme Court of Arkansas.
May 18, 2000.
Mark Pryor, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellant.
No response.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
W.H. "DUB" ARNOLD, Chief Justice.
The State has petitioned for rehearing in this case, contending that this court's opinion delivered on February 10, 2000, State v. Sullivan, 340 Ark. 315, 11 S.W.3d 526 (2000), contained a significant error of law. The State argues that this court's analysis of the present case using the concept of "pretext" is contrary to the United States Supreme Court's opinion in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The State presents us with the Whren case for the first time on rehearing and argues that under Whren, a police officer may arrest someone for a minor traffic violation, knowing full well that the real reason for the arrest is to enable a search of the vehicle for a suspected crime.
We do not read Whren as going as far as the State would have it. In Whren, the police officers observed youthful occupants at night in a vehicle with temporary license plates. The youths were acting suspiciously in a high-crime area. When the vehicle did a U-turn and sped off at an unreasonable speed, the police officers gave chase and stopped the vehicle. One of the police officers approached the vehicle and saw two bags of crack cocaine in the driver's hands.
These facts are very different from those in the case before us. Here, the police officer stopped Sullivan for speeding, *552 arrested him primarily because he had a roofing hatchet on the floor of his vehicle which had rusted into the carpet, and then conducted an inventory search following the arrest. As the trial court found in its ruling:
[F]ollowing our hearing yesterday, I have gone over the testimony and looked at what I believe to be the law in that case, and it's going to be my decision in this particular instance that based on the testimony, specifically that the officer testified that he stopped the car based on a charge of suspicion of speedingwhich I have no problem with the stop. I think that was ... there was radar. I don't have any problem with that.
He testified that once he got him stopped, he recognized him as someone that he had seen intelligence on regarding narcotics, and herather than write citations, he physically arrested him. And the weapons charge, I think, was added to that. And I don't believe that in this particular instance that thethat that was appropriate, and I'm going to grant the defendant's motion to suppress the evidence seized as a result of that search.
The State argues that under Whren, the Supreme Court has determined that the ulterior motives of police officers are irrelevant so long as there is probable cause for the traffic stop. Admittedly, the decision in Whren is broadly written, but much of it is dicta. Nevertheless, we do not interpret Whren as blanket authority for pretextual arrests for purposes of a search in all cases. Rather, the reasonableness of the arrest and search must be governed by the facts of each case. For example, we do not believe that Whren goes so far as to sanction conduct where a police officer can trail a targeted vehicle with a driver merely suspected of criminal activity, wait for the driver to exceed the speed limit by one mile per hour, arrest the driver for speeding, and conduct a full-blown inventory search of the vehicle with impunity.
Several jurisdictions, after the Whren decision, have refused to give total authority to law enforcement for pretextual arrests and the resulting searches, either because of state constitutions or because the search and seizure was unreasonable. See, e.g., State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999); State v. Varnado, 582 N.W.2d 886 (Minn.1998); People v. Dickson, 180 Misc.2d 113, 690 N.Y.S.2d 390 (1998); State v. Gonzalez-Gutierrez, 187 Ariz. 116, 927 P.2d 776 (1996). Further, one jurisdiction has questioned the ultimate absurdity of whether Whren was meant to sanction arrests and searches incident to a parking violation. See State v. Holmes, 569 N.W.2d 181 (Minn. 1997).
This court has cited Whren in two cases. See Travis v. State, 331 Ark. 7, 959 S.W.2d 32 (1998); Burris v. State 330 Ark. 66, 954 S.W.2d 209 (1997). Neither case dealt with the issue of pretextual arrests but rather cited Whren for the proposition that probable cause of a traffic violation is all that is required for a police officer to make a stop. In fact, in Travis, we specifically noted that the argument of a pretextual arrest had not been made.
Here, the trial court found that the arrest was pretextual and made for the purpose of searching Sullivan's vehicle for evidence of a crime. Again, we do not believe that Whren disallows this. Moreover, even if we were to interpret Whren to give full rein to law enforcement to effect pretextual arrests for traffic violations, there is nothing that prevents this court from interpreting the U.S. Constitution more broadly than the United States Supreme Court, which has the effect of providing more rights. We arguably have done so with our Criminal Rules that provide more stringent requirements for nighttime searches than Court decisions. See Ark. R.Crim. P. 13.2(c); Garner v. State, 307 Ark. 353, 820 S.W.2d 446 (1991).
In sum, we will not give carte blanche approval for all pretextual arrests for traffic violations, as the State would have us *553 do. We draw a clear distinction between arresting a person with crack cocaine in his hands as was the case in Whren and effecting a pretextual arrest for purposes of a search, such as we have in the instant case. Surely that flies in the face of reasonableness, which is the essence of the Fourth Amendment. See State v. Holmes, supra. We will decide the reasonableness of the arrest and search on a case-by-case basis, as the Whren decision makes clear. For these reasons, we deny the State's petition for rehearing.
Denied.
CORBIN, BROWN, and THORNTON, JJ., join.
GLAZE, IMBER, and SMITH, JJ., would grant rehearing.
TOM GLAZE, Justice, dissenting.
The State petitioned for rehearing in this case, arguing that our decision rendered on February 10, 2000, State v. Sullivan, 340 Ark. 315, 11 S.W.3d 526 (2000), contained a significant error of law in failing to mention Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). It is true that our opinion did not discuss Whren, but only because that case was neither cited nor argued to this court. I agree with the majority court that the Whren decision is significant to our reaching a correct holding in the present case; thus, our court considers it now.[1]
As our court set out in its original opinion, the evidence was uncontroverted that police officer Joe Taylor made a proper stop of Kenneth Sullivan's car because Sullivan was speeding. Sullivan also had no insurance, vehicle registration, or functional speedometer, and his car windows were improperly tinted. The officer additionally observed a hatchet on the driver's floorboard. The officer advised Sullivan that he was being placed under arrest for these infractions and for driving an unsafe car. He put Sullivan in the back of another officer's car and began inventorying Sullivan's vehicle. In the search, the officer found methamphetamine and marijuana. In making the inventory search, Taylor testified that he followed his department's policy and procedural manual. In these circumstances, Officer Taylor had probable cause to believe Sullivan committed a traffic offense at the time of the stop. That valid stop resulted in the discovery of other violations of the law that permitted Taylor to arrest Sullivan and inventory his car, where the officer found illegal drugs.
Recently, in Travis v. State, 331 Ark. 7, 959 S.W.2d 32 (1998), our court upheld the stop of a defendant's truck for committing a traffic offensefailing to display expiration-date stickers. After the stop, the officer discovered that the driver of the truck had a suspended driver's license, and the passenger, defendant, was a felon who also had no valid license. The officer had the truck towed. When the officer later opened the door of the truck, he found a rifle which led to the defendant's arrest for being a felon in possession of a firearm. At trial, the defendant argued that no probable cause existed for the officer to stop his truck because the officer wrongly believed the Texas license plate was required to display an expiration sticker. Citing Burris v. State, 330 Ark. 66, 954 S.W.2d 209 (1997), and Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Travis court rejected the defendant's argument and upheld the search of defendant's truck, holding that it is well settled that an officer may stop and detain a motorist where the officer has probable cause to believe a traffic violation had occurred. Furthermore, in reaching its decision, the Travis court repeated the rule in Brunson v. State, 327 Ark. 567, 940 S.W.2d 440 (1997), that, in *554 assessing the existence of probable cause, our review is liberal rather than strict. To the same effect, see Burris v. State, 330 Ark. 66, 954 S.W.2d 209 (1997). In the present case, once the officer made a valid stop and arrested Sullivan for the numerous traffic violations, including driving an unsafe vehicle, the officer had the authority to perform an inventory of Sullivan's vehicle.
It has been suggested that the State's argument on rehearing is that a police officer may arrest someone for a minor traffic violation, knowing full well that the real reason for the arrest is to enable a search of the vehicle for a suspected crime. To the contrary, the State set out its contention as follows:
The relevant inquiry, thus, is not whether the officer had an ulterior motive for stopping the vehicle, but whether the officer had probable cause to believe that the defendant was committing a traffic offense at the time of the initial stop. Travis, supra; Burris, supra. Based on his radar detection of [Sullivan's] speed, the officer here unquestionably had probable cause to stop [Sullivan]. This Court, thus, applied the wrong standard when it decided this case based on its view that the officer stopped appellee based on an ulterior motive. Even if the officer had an ulterior motive, which the State does not admit, it is not to be taken into account by this Court, according to Whren, because the stop was unquestionably proper. The Court should grant rehearing to consider this case in the light of Whren, Travis, and Burris.
It has been further suggested that Officer Taylor had arrested Sullivan primarily because he had a roofing hatchet in the floor of his vehicle; however, even if the trial court believed this to be true, Taylor still had probable cause to detain and arrest Sullivan for the numerous traffic offenses he had committed. It appears that the judge got off track by injecting his personal view as to whether a hatchet could be a weapon for which he could be arrested for possession. The judge mused, "I've got a hammer under the seat of my car today. Am I subject to being arrested and taken physically into custody because I have a hammer?" With all due respect to the trial judge, the issue, as stated above, is not whether the hatchet, alone, was cause for an arrest after the stop, but whether Sullivan had committed traffic violations in Officer Taylor's presence. Unquestionably, such violations occurred.
In sum, because Sullivan was speeding, had no insurance or vehicle registration, a non-working speedometer, illegally tinted windows, and an unsafe vehicle, the officer had the right to place (and did place) Sullivan under arrest. Sullivan's arrest was valid under Ark. R.Crim. P. 4.1(a)(iii) (1999), which states that "a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed... any violation of the law in the officer's presence." (Emphasis added.) Pursuant to this rule, a law enforcement officer is authorized to arrest a person for minor traffic violations witnessed by the officer, such as speeding. See State v. Earl, 333 Ark. 489, 970 S.W.2d 789 (1998); Hazelwood v. State, 328 Ark. 602, 945 S.W.2d 365 (1997). The officer's arrest of Sullivan was, therefore, valid. These violations being found also allowed Taylor to make an inventory search that quickly led to the discovery of illegal drugs. See Ark. R.Crim. P. 12.6(b) (1999) (a vehicle impounded in consequence of any arrest, or retained in official custody for other cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents). The trial court did not find, nor did Sullivan prove, that the inventory search was conducted in bad faith for the sole purpose of collecting evidence.
The majority opinion on rehearing hypothecates that the Supreme Court's Whren case does not go so far as to sanction *555 conduct where a police can trail a targeted vehicle with a driver merely suspected of criminal activity, wait for the driver to exceed the speed limit by one mile per hour, arrest the driver for speeding, and conduct a full-blown inventory search of the vehicle with impunity. Of course, I agree Whren does not allow such a stop and search, but those are not the facts before this court. It is uncontroverted that, at the time of the stop, Officer Taylor did not know the driver was Sullivan. Once again, even the trial court found no pretextual stop, and ruled the stop valid. Under the circumstances of this case, Sullivan's criminal record simply cannot be utilized to his advantage at the time of his stop and arrest.
The majority court validates the stop in this case, but finds Sullivan's arrest pretextual. Again, Sullivan's violation of numerous traffic offenses justified his arrest, and I am unaware of any rule or law that requires an officer merely to issue citations in a traffic stop where numerous violations occurred. Furthermore, I find nothing in the record that the officer could not arrest the violator. While it is true that Officer Taylor, after the stop, recognized Sullivan as a person who had been involved in illegal drugs, surely this fact should not be employed by our court to hold Sullivan's arrest invalid. Labeling Sullivan's arrest illegal when so many other violations justified it fails to comport with the law.
In fact, Supreme Court jurisprudence dictates a contrary result. In United States v. Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), the court dismissed the argument that an ulterior motive might strip law enforcement officers of their legal justification to undertake a search. The Court likewise held that a traffic-violation arrest would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search." United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Summarizing these and other cases in Whren, Justice Scalia wrote, "[w]e think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Whren, 517 U.S. at 813, 116 S.Ct. 1769.
For the above reasons, I would hold that the trial court erred and would overturn its ruling. The majority court's failure to do so will generate considerable confusion among the rank and file of law enforcement, the bench, and the bar alike. Its decision is unquestionably a departure from search and seizure law as the Supreme Court has heretofore defined it.
IMBER and SMITH, JJ., join this dissenting opinion.
NOTES
[1] The State also failed to cite or argue Arkansas cases Travis v. State, 331 Ark. 7, 959 S.W.2d 32 (1998), or Burris v. State, 330 Ark. 66, 954 S.W.2d 209 (1997). However, the Travis, Burris, and Whren cases are relevant to the search, seizure, and arrest issues raised at trial and on appeal and require this court to consider them.