## ARKANSAS v. SULLIVAN

No. 00–262.   Decided May 29, 2001

PER CURIAM.

In November 1998, Officer Joe Taylor of the Conway, Arkansas, Police Department stopped respondent Sullivan for speeding and for having an improperly tinted windshield. Taylor approached Sullivan's vehicle, explained the reason for the stop, and requested Sullivan's license, regis-

tration, and insurance documentation. Upon seeing Sullivan's license, Taylor realized that he was aware of "'intelligence on [Sullivan] regarding narcotics.'" 340 Ark. 318-A, 318-B, 16 S. W. 3d 551, 552 (2000). When Sullivan opened his car door in an (unsuccessful) attempt to locate his registration and insurance papers, Taylor noticed a rusted roofing hatchet on the car's floorboard. Taylor then arrested Sullivan for speeding, driving without his registration and insurance documentation, carrying a weapon (the roofing hatchet), and improper window tinting.

After another officer arrived and placed Sullivan in his squad car, Officer Taylor conducted an inventory search of Sullivan's vehicle pursuant to the Conway Police Department's Vehicle Inventory Policy. Under the vehicle's armrest, Taylor discovered a bag containing a substance that appeared to him to be methamphetamine as well as numerous items of suspected drug paraphernalia. As a result of the detention and search, Sullivan was charged with various state-law drug offenses, unlawful possession of a weapon, and speeding.

Sullivan moved to suppress the evidence seized from his vehicle on the basis that his arrest was merely a "pretext and sham to search" him and, therefore, violated the Fourth and Fourteenth Amendments to the United States Constitution. Pet. for Cert. 3. The trial court granted the suppression motion and, on the State's interlocutory appeal, the Arkansas Supreme Court affirmed. 340 Ark. 315, 11 S. W. 3d 526 (2000). The State petitioned for rehearing, contending that the court had erred by taking into account Officer Taylor's subjective motivation, in disregard of this Court's opinion in *Whren* v. *United States*, 517 U. S. 806 (1996). Over the dissent of three justices, the court rejected the State's argument that *Whren* makes "the ulterior motives of police officers . . . irrelevant so long as there is probable cause for the traffic stop" and denied the State's rehearing petition. 340 Ark., at 318-B, 16 S. W. 3d, at 552.

The Arkansas Supreme Court declined to follow *Whren* on the ground that "much of it is *dicta*." 340 Ark., at 318–B, 16 S. W. 3d, at 552. The court reiterated the trial judge's conclusion that "the arrest was pretextual and made for the purpose of searching Sullivan's vehicle for evidence of a crime," and observed that "we do not believe that *Whren* disallows" suppression on such a basis. *Id.*, at 318–C, 16 S. W. 3d, at 552. Finally, the court asserted that, even if it were to conclude that *Whren* precludes inquiry into an arresting officer's subjective motivation, "there is nothing that prevents this court from interpreting the U. S. Constitution more broadly than the United States Supreme Court, which has the effect of providing more rights." 340 Ark., at 318–C, 16 S. W. 3d, at 552.

Because the Arkansas Supreme Court's decision on rehearing is flatly contrary to this Court's controlling precedent, we grant the State's petition for a writ of certiorari and reverse.* As an initial matter, we note that the Arkansas Supreme Court never questioned Officer Taylor's authority to arrest Sullivan for a fine-only traffic violation (speeding), and rightly so. See *Atwater* v. *Lago Vista, ante,* p. 318. Rather, the court affirmed the trial judge's suppression of the drug-related evidence on the theory that Officer Taylor's arrest of Sullivan, although supported by probable cause, nonetheless violated the Fourth Amendment because Taylor had an improper subjective motivation for making the stop. The Arkansas Supreme Court's holding to that effect cannot be squared with our decision in *Whren,* in which we noted our "unwilling[ness] to entertain Fourth Amendment challenges based on the actual motivations of individual officers,"

---

*Sullivan's motion for leave to proceed *in forma pauperis* is granted. We have jurisdiction under 28 U. S. C. § 1257 notwithstanding the absence of final judgment in the underlying prosecution. See *New York* v. *Quarles,* 467 U. S. 649, 651, n. 1 (1984) ("[S]hould the State convict respondent at trial, its claim that certain evidence was wrongfully suppressed will be moot. Should respondent be acquitted at trial, the State will be precluded from pressing its federal claim again on appeal").

and held unanimously that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U. S., at 813. That *Whren* involved a traffic stop, rather than a custodial arrest, is of no particular moment; indeed, *Whren* itself relied on *United States* v. *Robinson*, 414 U. S. 218 (1973), for the proposition that "a traffic-violation arrest . . . [will] not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" 517 U. S., at 812–813.

The Arkansas Supreme Court's alternative holding, that it may interpret the United States Constitution to provide greater protection than this Court's own federal constitutional precedents provide, is foreclosed by *Oregon* v. *Hass*, 420 U. S. 714 (1975). There, we observed that the Oregon Supreme Court's statement that it could "'interpret the Fourth Amendment more restrictively than interpreted by the United States Supreme Court'" was "not the law and surely must be an inadvertent error." *Id.*, at 719, n. 4. We reiterated in *Hass* that while "a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards," it "may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." *Id.*, at 719.

The judgment of the Arkansas Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE GINSBURG, with whom JUSTICE STEVENS, JUSTICE O'CONNOR, and JUSTICE BREYER join, concurring.

The Arkansas Supreme Court was moved by a concern rooted in the Fourth Amendment. Validating Kenneth Sullivan's arrest, the Arkansas court feared, would accord police officers disturbing discretion to intrude on individuals' lib-

erty and privacy. See 340 Ark. 318–A, 318–B, 16 S. W. 3d 551, 552 (2000) (expressing unwillingness "to sanction conduct where a police officer can trail a targeted vehicle with a driver merely suspected of criminal activity, wait for the driver to exceed the speed limit by one mile per hour, arrest the driver for speeding, and conduct a full-blown inventory search of the vehicle with impunity"). But this Court has held that such exercises of official discretion are unlimited by the Fourth Amendment. See *Atwater* v. *Lago Vista, ante,* p. 318; *Whren* v. *United States,* 517 U. S. 806 (1996). Given the Court's current case law, I join the Court's opinion.

In *Atwater,* which recognized no constitutional limitation on arrest for a fine-only misdemeanor offense, this Court relied in part on a perceived "dearth of horribles demanding redress." *Ante,* at 353. Although I joined a dissenting opinion questioning the relevance of the Court's conclusion on that score, see *ante,* at 372 (opinion of O'CONNOR, J.), I hope the Court's perception proves correct. But if it does not, if experience demonstrates "anything like an epidemic of unnecessary minor-offense arrests," *ante,* at 353 (opinion of the Court), I hope the Court will reconsider its recent precedent. See *Vasquez* v. *Hillery,* 474 U. S. 254, 266 (1986) (observing that Court has departed from *stare decisis* when necessary "to bring its opinions into agreement with experience and with facts newly ascertained") (quoting *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393, 412 (1932) (Brandeis, J., dissenting)).