**UNITED STATES of America,**

v.

**Oscar Marvin PAGE, et al.**

**No. 2–00–00016.**

United States District Court, M.D. Tennessee.

July 11, 2001.

Jimmie Lynn Ramsaur, Office of the U.S. Attorney, Nashville, TN, for United States.

Julie Elizabeth Officer, Livingston, TN, Charles R. Ray, Nashville, TN, for Jerry Wayne Sherrill.

Thomas J. Drake, Jr., Craig & Drake, Nashville, TN, for Tim Grover Ledford.

### *MEMORANDUM*

HIGGINS, District Judge.

The Court has before it the motion (filed May 22, 2001; Docket Entry No. 654) of the defendant, Jerry Wayne Sherrill, to suppress, his memorandum (Docket Entry No. 655) in support and the government's response (filed May 30, 2001; Docket Entry No. 675).

A hearing was held on the defendant's motion on June 7, 2001. For the reasons stated below, the defendant's motion shall be granted.

### I.

On June 23, 2000, the defendant, Jerry Wayne Sherrill, was driving a red Z–71 Chevrolet extended cab pickup truck and was stopped by Cookeville, Tennessee, Police Officer, Eric Hall. Officer Hall testified that at 6:11 p.m. he received a dispatch informing him to proceed to the office of the drug task force on Highway 70 within the Cookeville city limit. Upon his arrival, a Sergeant Markham informed Officer Hall that a vehicle fitting the description of the defendant's pickup truck would be passing through the intersection of Highway 70 and Pippen Road [1] any minute and that it needed to be stopped. Moments later, Officer Hall viewed the vehicle in question and began to follow it. After Officer Hall confirmed the description and license tags of the vehicle, he activated his lights and pulled over the vehicle about two to three miles from the Highway 70 and Pippen Road intersection. Officer Hall testified that about five minutes transpired from the time which he spoke with Sgt. Markham to the stopping of the defendant's vehicle.

Officer Hall approached the driver's side of the vehicle and discovered that there were two occupants in the vehicle. He asked the defendant, who was the driver, for his driver's license. The defendant asked Officer Hall why he had been stopped to which he responded by asking the defendant to step to the rear of the

truck. Officer Hall testified that about five minutes transpired from the time of the initial stop to the removal of the defendant from the truck. At the rear of the truck, Officer Hall told the defendant that other agents had asked him to stop his vehicle, that they would be arriving on the scene in minutes and that he would inform him of the reason for the stop upon their arrival.

Shortly after the stop, Officer Harrington of the Cookeville City Police Department arrived on the scene, followed by Officers Cobble and Davis of the 13th Judicial District Drug Task Force. All three officers arrived in separate vehicles. Officer Hall estimated that Officer Cobble arrived approximately 6 to 8 minutes after the initial stop.[2] Officer Cobble informed Officer Hall that the reason for the stop was that the windows on the defendant's vehicle appeared to be in violation of Tennessee's window tinting law, Tenn.Code Ann. § 55–9–107. Upon receiving this information, Officer Hall relayed it to the defendant.

Officer Cobble then took out his drug detection dog, Boomer, and proceeded to walk the dog around the defendant's truck. The dog stopped by the passenger side of the truck and alerted to the presence of narcotics. Officer Cobble placed the dog back in his car and asked the defendant for his consent to search his truck. According to Officer Cobble, the defendant responded that he rather the officer had a warrant. Officer Cobble informed the defendant that he would search the truck based on the dog's alert.[3]

---

1. The intersection is within eyesight of the drug task force office.

2. Officer Cobble estimated the time to be about 8 to 10 minutes.

3. Officer Hall testified that prior to Officer Cobble's arrival and during the search of the

defendant's vehicle, he was in contact with dispatch, running license and warrant checks on the defendant and his passenger. He stated that the checks were completed after the search and that the whole process took about 10 to 15 minutes.

Officer Cobble searched the interior of the truck and found in the console a small candy wrapper containing a white substance. He then placed the defendant under arrest, charging him and the other passenger with possession of a controlled substance. Officer Cobble subsequently tested the tint on the vehicle's window but did not issue the defendant a citation for illegal window tint.

The defendant is charged in the indictment with conspiring to distribute and possess with intent to distribute cocaine and crack cocaine in violation of Title 21, United States Code, Section 846; and possession and attempt to possess with intent to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and aiding and abetting such offenses, in violation of Title 18, United States Code, Section 2.

The defendant asserts that under the Fourth Amendment to the United States Constitution the narcotics discovered during the search of Mr. Sherrill's vehicle should be suppressed because probable cause to search the vehicle was developed as the result of an unlawful traffic stop.[4] Specifically, the defendant asserts that the stop was unreasonable, as Officer Cobble did not have probable cause to believe that Mr. Sherrill had committed a traffic violation for having illegally tinted windows.

## II.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court of the United States has found that the stop of an automobile and the temporary detention of individuals during the stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996) (citations omitted). The Court explained that an automobile stop constitutes a seizure under the Fourth Amendment because it "significantly curtails the freedom of action of the driver and the passengers, if any, of the detained vehicle." *Berkemer v. McCarty,* 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332 (1984).

In determining whether an automobile stop is constitutional, the Court must conduct a fact specific inquiry which turns upon whether the stop is reasonable under the circumstances. *Id.* Where the police have probable cause to believe that a traffic violation has occurred, the Supreme Court has found that the decision to stop an automobile is reasonable. *See Delaware v. Prouse,* 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660, 667 (1979); *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 336 (1977) (per curiam). The Court of Appeals for the Sixth Circuit in *United States v. Ferguson,* 8 F.3d 385 (6th Cir.1993) (en banc), *cert. denied,* 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994), stated that the police could reasonably stop a vehicle for any traffic violation, no matter how slight and no matter whether the hope of finding contraband as the result of the stop was the officer's subjective motivation for making the stop.

The government contends that Officer Cobble had probable cause to stop the defendant because Mr. Sherrill had illegally tinted windows. The defendant argues that Officer Cobble did not have probable cause to stop the defendant because Officer Cobble did not have a valid reason for

---

**4.** Officer Hall conceded on cross examination that the defendant did not commit any traffic violations in his presence.

believing that a traffic violation had in fact occurred.

In support of its assertion that Officer Cobble had probable cause to stop the defendants, the government relies on Tennessee Code Annotated, Section 55–9–107, governing the allowable amount of window tint on motor vehicles. That section states, in relevant part:

(a)(1) It is unlawful for any person to operate, upon a public highway, street or road, any motor vehicle registered in this state, in which any window, which has a visible light transmittance equal to, but not less than, that specified in the Federal Motor Vehicle Safety Standard No. 205, has been altered, treated or replaced by the affixing, application or installation of any material which: (A) Has a visible light transmittance of less than thirty-five percent (35%); or (B) With the exception of the manufacturer's standard installed shade band, reduces the visible light transmittance in the windshield below seventy percent (70%).

. . .

(c) It is probable cause for a full-time, salaried police officer of this state to detain a motor vehicle being operated on the public roads, streets or highways of this state when such officer has a reasonable belief that the motor vehicle is in violation of subdivision (a)(1), for the purpose of conducting a field comparison test.

Tenn.Code Ann. § 55–9–107.

The government maintains that the officers were aware of Tennessee's prohibition against excessively tinted windows on motor vehicles, were trained to recognize motor vehicles in violation of the statute and observed that the windows on the defendant's vehicle were in violation of this statute.

■ The law is well-settled that pretextual traffic stops are permissible. *Whren,*

517 U.S. at 812–13, 116 S.Ct. at 1774, 135 L.Ed.2d at 97; *Arkansas v. Sullivan,* —— U.S. ——, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001); *United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999). "That is to say, an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle." *Hill,* 195 F.3d at 264.

Officer Cobble testified that he had seen the defendant's truck shortly before 6:00 p.m. Later, he received information from other agents informing him that there were drugs located in the truck that the defendant was driving. Based on this information, he positioned himself in a place to try to initiate a traffic stop. From his location, he observed the defendant drive by, passing him from his right to his left. The defendant was maneuvering around a sharp curve in the road, and Officer Cobble estimated that the defendant was driving about 25–30 m.p.h. He testified that the driver's window was facing him and he could not see into the truck. He stated that he did not see the back rear window. He further stated that he was familiar with the window tint law and in the past issued citations for violating the statute. Officer Cobble's car suffered mechanical problems, and as a result, he called his office to get another officer to stop the defendant.

As has been stated, Officer Cobble's ulterior motive for stopping the defendant for drug possession does not in itself constitute an impermissible stop. However, the reasonableness of a stop "is ascertained by determining first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Freeman,* 209 F.3d 464, 466 (6th Cir.2000) (citing *Terry*

*v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889, 904–05 (1968)).

In *Hill,* the Sixth Circuit voiced its concern over the potential abuse by officers in stopping vehicles for any alleged traffic violation. The Court stated:

> We share in the concern that police officers are using the state of the law in this Circuit as carte blanche permission to stop and search "target" or "profile" vehicles for drugs. Of course, the Supreme Court in *Whren* confirmed that a police officer is legally allowed to stop a vehicle for a traffic violation when there is probable cause for the traffic stop, without regard for the officer's subjective motivation. However, we agree that it is the responsibility of the courts to make sure that police officers act appropriately and not abuse the power legally afforded to them by, among other things, carefully scrutinizing a police officer's testimony as to the purpose of the initial traffic stop.

195 F.3d at 267.

 Mindful of the concerns articulated by the Sixth circuit in *Hill,* the Court finds that the stop of the defendant's vehicle was unreasonable at its inception. Officer Cobble testified that he had seen the defendant's truck earlier around 6:00 p.m., but he made no mention in his testimony as to the tint of the windows at that time. He subsequently observed the defendant's truck minutes later, after receiving a call from other agents, traveling approximately 30 m.p.h. and claims he was able to determine, during a 5–10 second interval, that the windows' tint was too dark.[5] However, he stated that he was unable to observe the rear window of the truck. The Court finds this brief observation by Officer Cobble is insufficient to establish probable cause in stopping the defendant's vehicle.

As Officer Hall testified that he did not stop the defendant for a traffic violation but in response to a request by Sgt. Markham, the Court finds that the stop of the defendant's vehicle was unreasonable.

 Evidence seized as the result of an unconstitutional search is the fruit of the poisonous tree and may not be used as proof against the victim of the search. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Accordingly, the ensuing search of Mr. Sherrill's vehicle violated his right to be free of unreasonable searches and seizures. Therefore, the Court concludes that the evidence seized from the defendant's vehicle shall be suppressed.

---

**5.** The Court does not credit the testimony of Officer Cobble that he could determine the

tint of the windows by a fleeting glance in this brief interval.