Cavanagh, J.

(dissenting).

I agree with the majority’s observation that the United States Supreme Court has never been squarely presented with the question whether the public-figure and private-figure dichotomy embodied in the case law on defamation involving First Amendment’s Free Speech Clause and Free Press Clause should extend to defamation cases involving the Petition Clause. However, I disagree with the majority’s conclusion that McDonald v Smith, 472 US 479; 105 S Ct 2787; 86 L Ed 2d 384 (1985), requires application of the public-figure and private-figure dichotomy to Petition Clause defamation cases. While, arguably, McDonald may allow application of the dichotomy to Petition Clause defamation cases, it certainly does not require it. Further, the principles expressed by our high court do not support the majority’s conclusion. Because I do not agree with the majority’s assertion that McDonald forces states to import the public-figure and private-figure dichotomy to Petition Clause defamation cases, and because I recognize the historical significance of the Petition Clause, as well as the fact that the text *756 and structure of the Petition Clause in the Michigan Constitution differ from the text and structure of the First Amendment of the United States Constitution, I respectfully dissent. I would ask the parties for additional briefing regarding the effect of the Petition Clause in the Michigan Constitution.
I. THE PETITION CLAUSE: IS THERE A PUBLIC-FIGURE VERSUS PRIVATE-FIGURE DISTINCTION?
The majority acknowledges that the defamation action in McDonald was brought pursuant to North Carolina’s common law, which requires a showing of “actual malice” to recover for defamation, regardless of whether the plaintiff is a public or a private figure.[1] The majority concludes that this application of state law by the United States Supreme Court “strongly signaled its view that all Free Speech Clause and Free Press Clause defamation doctrine developed in the past forty years is to be imported without change to constitutional adjudications arising under the Petition Clause”[2] and rejects an alternative interpretation, instead relying on Arkansas v Sullivan, 532 US 769; 121 S Ct 1876; 149 L Ed 2d 994 (2001). The majority states:
*757 In interpreting the federal constitution, state courts are not privileged to provide greater protections or restrictions when the Supreme Court of the United States has refrained from doing so. [Ante at 731 n 9.]
In Sullivan, the United States Supreme Court reversed the Arkansas Supreme Court’s holding that it was free to interpret the United States Constitution to provide greater protection than United States Supreme Court federal constitutional precedent provides. The Sullivan Court noted that such a possibility was foreclosed by Oregon v Hass, 420 US 714; 95 S Ct 1215, 43 L Ed 2d 570 (1975):
We reiterated in Hass that while “a State is free as a matter of its own law to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards,” it “may not impose such greater restrictions as a matter of federal constitutional law when this Court specifically refrains from imposing them.” [Sullivan at 772, quoting Hass at 719 (emphasis in original).]
The majority’s reliance on Sullivan is misplaced for two reasons. First, requiring all plaintiffs to prove that defamatory statements were made with actual malice in Petition Clause defamation cases would not impose a “greater restriction” than that imposed by the United States Supreme Court in McDonald. In fact, it would apply the same standard utilized by the Court in McDonald. The majority’s reliance on Sullivan is also misplaced because the United States Supreme Court has not “specifically refrained” from applying the actual-malice standard to private-figure plaintiffs in Petition Clause defamation claims. This remains, as acknowledged by the majority, a question not yet decided by the United States Supreme Court.
*758 Further, in McDonald, the United States Supreme Court held that the right to petition should be accorded no greater protection than other First Amendment expressions, inasmuch as absolute immunity was held inappropriate. McDonald did not hold that the right to petition was limited to the same protection as the rights to free speech and free press. The Court did not indicate a clear intent to import the veritable plethora of jurisprudence surrounding the rights to free speech and free press into Petition Clause defamation.
Moreover, the principles articulated in McDonald do not support the interpretation employed by the majority. The question the Court was presented with in McDonald was
whether the Petition Clause of the First Amendment provides absolute immunity to a defendant charged with expressing libelous and damaging falsehoods in letters to the President of the United States. [McDonald at 480.]
The Court repeatedly examined the claim of absolute immunity in light of the actual-malice standard. Reviewing early state libel cases, the McDonald Court determined that there were conflicting views of the privilege afforded petitioners: some states afforded petitioners absolute immunity, while others allowed recovery for petitioning activity performed “maliciously, wantonly, and without probable cause . . . .” Id. at 483, quoting, Gray v Pentland, 2 Serg & R 23 (Penn, 1815). The McDonald Court also noted that in White v Nicholls, 44 US (3 How) 266; 11 L Ed 591 (1845), it did not recognize an absolute privilege, rather it concluded that “the defendant’s petition was actionable if prompted by ‘express malice ....’” *759 McDonald at 484. The McDonald opinion does not mention negligence; it simply holds that there is not absolute immunity for Petition Clause defamation.
As scholars have noted:
The text [of McDonald] merely requires proof of actual malice ‘defined ... in terms . . . consistent with New York Times v. Sullivan.’ If the Court had intended to establish the entire public/private figure [dichotomy] for Petition Clause [defamation] cases, [it] would have discussed Gertz v Robert Welch, Inc. [Gary, First Amendment Petition Clause immunity from tort suits: In search of a consistent doctrinal framework, 33 Idaho L R 67, 110 (1996) (citations omitted).]
McDonald is more commonly interpreted as employing the actual-malice standard of New York Times Co v Sullivan, 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964); to interpret McDonald as incorporating the public-figure and private-figure dichotomy is a misreading of the case. Gary at 109; see also, 4 Rotunda & Nowak, Treatise on Constitutional Law (3d ed), § 20.53, p 690 n 3 (The Petition Clause does not require state libel law to expand the qualified privilege already afforded by New York Times.).
Justice Brennan’s concurrence in McDonald provides useful insight, he stated:
There is no persuasive reason for according greater or lesser protection to expression on matters of public importance depending on whether the expression consists of speaking to neighbors across the backyard fence, publishing an editorial in the local newspaper, or sending a letter to tire President of the United States. It necessarily follows that expression falling within the scope of the Petition Clause, while fully protected by the actual-malice standard set forth in New York Times Co v Sullivan, is not shielded by an absolute privilege. [McDonald at 490.]
*760 “This forceful statement suggests that actual malice is the standard for petitioning activity, regardless of the status of the plaintiff.” Gary at 112.
Thus, while it is clear that the United States Supreme Court intended that a defendant claiming immunity from defamation on the basis of the Petition Clause not be afforded absolute immunity, it is not at all clear that the Court intended the qualified immunity to apply differently depending on whether the plaintiff is a public or a private figure. The majority’s assertion that McDonald requires the states to import the public-figure and private-figure dichotomy applicable in free-speech and free-press cases is simply not supported by a careful reading of that case.
II. MICHIGAN’S PETITION CLAUSE
While I recognize the principles underlying, and the historical significance of, the Petition Clause, as outlined by Justice Young in his concurring opinion, I am reluctant to question the wisdom of the United States Supreme Court in interpreting the federal constitution. However, on the basis of the principles noted in Justice Young’s concurring opinion, I think the bench and bar in this state would benefit from a thorough analysis of the protections afforded petitioners under the Michigan Constitution. Because this Court was not presented with such an analysis, I would request additional briefing from the parties.
Notably, the structure of Const 1963 differs from the federal constitution. Each right included in the federal constitution’s First Amendment is expressed as a separate clause in Const 1963, art 1, the Declara *761 tion of Rights. Const 1963, art 1, in pertinent part, provides:
Sec 2. No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation.
Sec 3. The people have the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances.
Sec. 4. Every person shall be at liberty to worship God according to the dictates of his own conscience. . . .
Sec. 5. Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press.
By contrast, the First Amendment to the federal constitution provides:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. [US Const, Am I.]
Because McDonald's determination that the rights to free speech and free press and the right to petition were inseparable was based on the structure of the Petition Clause, and because the structure of Michigan’s Petition Clause is decidedly different from the federal clause, I would inquire whether the framers of the Michigan Constitution intended to afford greater protection to petitioners by creating a distinct clause. *762 Because this issue was not briefed by the parties, and, thus, is not properly before the Court, I would ask the parties for further briefing on the issue.
m. CONCLUSION
I do not agree with the majority that McDonald requires states to impose the public-figure and private-figure dichotomy when deciding Petition Clause defamation cases. Further, McDonald can be and has been interpreted as establishing that, whenever the right to petition is exercised, that right is afforded the protection of the actual-malice standard. Because I believe it may be significant that the text and structure of Michigan’s Petition Clause differs from the federal constitution’s First Amendment and because I recognize the historical significance of the right to petition in a democratic society, I would request additional briefing.
Kelly, J., concurred with Cavanagh, J.

 Plaintiff’s cause of action in this case, by contrast, arises under Michigan’s defamation statute, MCL 600.2911(7), which provides:
An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

 Ante at 730-731.