In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-4109

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLEVELAND FRANKLIN, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05CR208—**John Daniel Tinder**, *Judge.*

ARGUED SEPTEMBER 25, 2008—DECIDED OCTOBER 27, 2008

Before POSNER, FLAUM, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Cleveland Franklin, Jr. was stopped by the Indianapolis Police Department on December 1, 2005, and a subsequent search of his car led police to over 270 grams of crack cocaine hidden in the dashboard. Franklin pled guilty to one count of possession of cocaine with intent to distribute and one count of carrying a firearm during a drug trafficking crime. Before pleading guilty, Franklin raised a number of challenges to

the search of his car, which he renews on appeal, along with various arguments about the indictment, the trial procedures, and his sentence.

For the following reasons, we affirm the decision of the district court.

## I. Background

In 2005, the Indianapolis Police Department was investigating Franklin for drug trafficking. On December 1, 2005, Detective Robert Wheeling, who was conducting that investigation, radioed Officer Matt Hall and informed him that Franklin was driving a gold Chevrolet Impala, and was likely in possession of a large amount of crack cocaine. Wheeling also informed Hall that Franklin had previous convictions for drug and weapon offenses.

Hall spotted Franklin's car driving through Indianapolis later that same evening. While following him, Hall observed that Franklin's car was traveling forty miles per hour in a thirty-five zone, and that the car made a lane change without signaling. Having witnessed these two traffic offenses, Hall made a traffic stop of Franklin's car. While approaching the vehicle, Hall noticed the smell of burnt marijuana coming from the open passenger side window. After telling Franklin about his traffic infractions, Hall also noticed something that looked like a marijuana stem near Franklin's knee. Hall asked Franklin to get out of his car and had him stand near the trunk. Franklin, who had been driving, denied having any drugs or guns in the car. When Franklin kept reaching near his pocket

despite Hall's warnings that he not do that, Hall handcuffed Franklin and had him sit on the curb. About this time, Hall's back-up, Officer Brady Ball, arrived. After Franklin's passenger, James Wright, refused to cooperate with instructions from the officers, Ball removed him from the car and placed him in handcuffs.

Suspicious of Franklin's denials that the car contained any drugs, Hall retrieved his drug sniffing dog, Bubba Deuce, from his patrol car. The dog alerted near the driver's side door. Officer Hall then proceeded to conduct a search of the Impala. While examining the interior of the car, Hall noticed that Franklin had placed a number of air fresheners underneath the dashboard of his car; knowing from his experience that this was often used to mask the odor of drugs, Hall searched around the dash. He ultimately discovered bags containing over 270 grams of crack cocaine in the fuse box panel on the right side of the dashboard.

According to the police, Franklin then made incriminating comments about the crack cocaine seized from his car while sitting in the back of a police squad car. At the station, Franklin said in a monitored phone call that the police missed a semiautomatic handgun that he had hidden inside the dashboard of the Impala. After obtaining a search warrant, the police seized the gun from the car.

On December 21, 2005, Franklin was charged with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii); carrying a firearm during a drug trafficking crime in violation of

18 U.S.C. § 924(c)(1); and unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Franklin filed a suppression motion on April 7, 2006, challenging the search of his car. The district court initially denied this motion on May 12, 2006, but reopened the question after Franklin supplemented the motion. The district court held a hearing on the suppression question in June 2006, ultimately denying the suppression motion for a second time after the hearing.

On July 28, 2006, Franklin entered a conditional plea of guilty to counts one and two of the indictment, the possession with intent to distribute charge and the use of a firearm in a drug trafficking crime charge. Franklin reserved the right to appeal the district court's denial of his suppression motion. On October 5, 2006, Franklin filed a second motion to re-open the suppression issue, and the district court held a second hearing and again denied the motion. On November 17, 2006, Franklin was sentenced to 300 months imprisonment and ten years of supervised release, along with a fine of $1,000. This appeal follows.

## II. Discussion

### A. Whether the indictment was defective with respect to the first count, in that it failed to charge that the firearm was used "in relation" to a drug trafficking crime.

Franklin first challenges the sufficiency of his indictment, arguing that it fails to charge an essential element of

§ 924(c)(1). That statute provides criminal penalties for anyone who carries a gun "during and in relation to any crime of violence or drug trafficking crime . . ." 18 U.S.C. § 924(c)(1). Franklin's indictment stated only that he carried a firearm "during a drug trafficking crime." At issue, then, is whether the indictment is insufficient because it eliminated the phrase "in relation to."

Franklin did not object to the indictment in the district court. Consequently, in this court the indictment "is immune from attack unless it is so obviously defective as not to charge the offense by any reasonable construction." *United States v. Smith*, 223 F.3d 554, 571 (7th Cir. 2000) (internal quotation marks and citations omitted). Moreover, this court will allow Franklin to withdraw the plea on the basis that it is obviously defective only if he shows that accepting the plea under the deficient indictment was plain error by the district court. *United States v. Harvey*, 484 F.3d 453, 455 (7th Cir. 2007).

Franklin argues that since he was charged under the portion of § 924(c)(1) that makes it a crime to carry a gun during and in relation to a drug trafficking crime, the "in relation to" portion of the statute is an essential element that must be charged in the indictment. He argues that the omission of the phrase made the indictment so deficient that he was unaware of the charges to which he was pleading guilty. The government concedes that the indictment was not perfect, and should have used the phrase "in relation to" rather than just "during" a drug trafficking crime. However, the government argues that the indictment is constitutionally sufficient insofar

as it made Franklin aware of the statute under which he was being charged and the way in which he violated the statute.

All parties agree that the indictment should have said that Franklin carried the firearm "during and in relation to" a drug trafficking offense. However, this circuit does not require that a particular word or phrase always be used when charging an offense in an indictment; rather, this circuit has held that "[i]n determining whether an essential element of the crime has been omitted from the charge, courts will not insist that any particular word or phrase . . . be used. The element may be alleged in any form which substantially states it." *United States v. Weatherspoon*, 581 F.2d 595, 600 (7th Cir. 1978). The indictment here is flawed, but not so flawed that it merits reversal; the count of the indictment that is in question gave Franklin the date and place at which the offense occurred, identified the handgun that he carried, and cited the statute under which he was charged. This circuit has previously held, with respect to § 924(c)(1), that the recitation of those facts is sufficient to give the defendant notice of the statute in question and the conduct that the government alleges ran afoul of the statute. *Harvey*, 484 F.3d at 457. We thus cannot find that an indictment that listed the statute under which Franklin was charged and that provided specifics about the predicate crime and the conduct that ran afoul of the statute was so defective that it does not charge a violation of the statute under any reasonable construction. Nor do we find that the district court abused its discretion by accepting Franklin's guilty plea.

### B.   *Whether the defendant's guilty plea was entered knowingly and voluntarily.*

Franklin next argues that his guilty plea was not entered knowingly and voluntarily, because neither the plea colloquy nor the plea agreement adequately set forth all of the elements of a violation of § 924(c)(1). Franklin did not seek to withdraw his guilty plea in the district court. This court will thus examine the record below only for plain error that seriously affected either the fairness, the integrity, or the public reputation of the prior proceeding. *United States v. Vonn*, 535 U.S. 55, 63 (2002).

Franklin argues that his plea was not knowing and voluntary because neither the district court, during the Rule 11 plea colloquy, nor the plea agreement, adequately spelled out the "in relation to" element of § 924(c)(1). He argues that his case is similar to *United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004), in which this court determined that a guilty plea was not knowing and voluntary because the defendant did not receive adequate notice of the elements of § 924(c)(1). He also cites *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000), a Ninth Circuit case in which the court determined that a guilty plea was not knowing or voluntary because the defendant was unaware of the "in relation to" element of the offense.

The government argues in response that the plea colloquy adequately demonstrated Franklin's understanding of the charges against him. Additionally, at the plea hearing, the government presented testimony from DEA Officer Paul Buchman, who testified to the circumstances

of Franklin's arrest, the amount of crack cocaine found in his car, and the monitored phone call in which Franklin talked about the police missing the Ruger handgun that he had kept in the car while transporting the drugs. The government also argues that the discovery of the gun and the drugs in the same part of the car (under the dashboard, while the drugs were found in a fuse box panel on the side of the dashboard) was sufficient to establish that the firearm was carried during and in relation to the drug trafficking crime.

Finally, the government points out that Franklin stipulated that there was an adequate factual basis for every element charged in the indictment. His counsel's exact stipulation, taken from the plea proceeding, is that "Mr. Franklin does not agree with all of the details of the factual basis, but he does stipulate that there is a factual basis for each element charged in both count 1 and count 2 of the indictment." Change of Plea Tr. at 38-39. Franklin argues in his reply brief that this stipulation is meaningless because it only stipulated to the elements contained in the indictment which, he claimed before, was defective.

This court uses a totality of the circumstances approach when evaluating whether or not a defendant voluntarily made a guilty plea. "Under this approach, we consider (1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the judge's inquiry during the plea hearing and the defendant's statements; and (5) the evidence proferred by the government." *United States v. Fernandez*, 205 F.3d 1020, 1025 (7th Cir. 2000).

In this case, the charges were not especially complex, and the charge at issue was simply that the gun was present while Franklin was transporting crack cocaine and was connected with the transport of crack cocaine. Franklin stated at the plea hearing that he was thirty years old and had completed the eleventh grade; while Franklin did not have extensive formal education, he also stated that he reads fiction, non-fiction, and law books, and so it was not plain error for the district court to conclude that he was capable of understanding the charges to which he was pleading. The district court inquired at the plea hearing into Franklin's understanding of the penalties that he would face by pleading guilty to count two and received the stipulation above that there was a factual basis for the elements charged in the indictment. Franklin's effort to minimize the import of this stipulation is not especially helpful to him; while it is true that the indictment in this case was far from perfect, the citation to the statute in count two should have informed Franklin about the elements of the crime to which he was pleading guilty. It was not an error, then, for the district court to accept this as a stipulation to the elements of § 924(c)(1). Finally, the government's presentation of the factual basis for the plea, while brief, established that the crack cocaine and Ruger pistol were found in the same part of Franklin's Impala and that Franklin had both the drugs and the gun in the car at the same time. That proximity is sufficient to establish a violation of § 924(c)(1). *See United States v. Molina*, 102 F.3d 928, 932 (7th Cir. 1996); *see also United States v. Pike*, 211 F.3d 385, 389-90 (7th Cir. 2000).

Finally, Franklin's citation to *United States v. Bradley* is not much help in this case. In *Bradley*, the defendant was charged with a § 924(c) offense for carrying a firearm during a drug trafficking crime and attempted to withdraw his guilty plea after the government only produced evidence that he had been guilty of possession of marijuana, which is not a drug trafficking crime and thus not a predicate to § 924(c). *Bradley*, 381 F.3d at 644. Thus, while *Bradley* does indicate that this court will allow a defendant to withdraw a guilty plea when the district court, the government, and the defendant all seem to be confused about the necessary elements of § 924(c), it is not much help to the defendant in a case where there was adequate proof of a predicate drug trafficking crime and the government demonstrated that a handgun was used during and in relation to that drug trafficking offense.

### C.  *Whether the district court properly denied the suppression motion.*

Franklin next argues that Officer Hall's traffic stop was pretextual and that the district court thus improperly denied Franklin's suppression motion. This issue is entirely a protective appeal, as Franklin's counsel plans to seek a writ of certiorari asking the Supreme Court to reconsider its decision in *Whren v. United States*, 517 U.S. 806 (1996). Franklin argues that the decision in *Whren* now requires reversal because of empirical evidence that the police use racial profiling techniques when determining whether or not to conduct a search pursuant to a traffic stop, and thus that minority drivers are much

more likely than non-minorities to be subjected to a full search pursuant to a traffic stop.

The government argues that the district court properly found that the search was supported by probable cause. First, the government argues that the probable cause determination in this case largely came down to a credibility determination between the witnesses for the defense and the arresting officer, and that the district court credited Officer Hall's testimony. On matters like this, "the district court's choice of whom to believe is almost never vulnerable to a finding of clear error." *United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003); *see also United States v. Thornton*, 197 F.3d 241, 247 (7th Cir. 1999). Second, the government argues that Officer Hall made a proper traffic stop; Franklin admits he does not remember how fast he was going and Officer Hall testified that he witnessed Franklin commit two traffic violations. Hall also had probable cause to search Franklin's vehicle for drugs because he could smell marijuana smoke through an open window as he approached the car. This probable cause determination was bolstered by his use of a drug-sniffing dog, who alerted near the front of the car. A police officer who smells marijuana coming from a car has probable cause to search that car. *See United States v. Wimbush*, 337 F.3d 947, 951 (7th Cir. 2003). And a police officer's use of a drug-sniffing dog around the exterior of a car is not an illegal search under the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

Franklin's argument that the stop was pretextual and thus unconstitutional is not really addressed to this court;

it is addressed to the Supreme Court. *Whren* has been reaffirmed by *Arkansas v. Sullivan*, 532 U.S. 769 (2001), in which the Court reiterated that it would not entertain arguments based on the "real" motivations behind otherwise lawful traffic stops. *Id.* at 771-72. The Court's recent Fourth Amendment jurisprudence offers observers little reason to believe that the justices wish to revisit this decision. *See, e.g., Virginia v. Moore*, No. 06-1082 (Sup. Ct. Apr. 23, 2008)*, Atwater v. Lago Vista*, 532 U.S. 318 (2001). Regardless, we need only apply Supreme Court precedent to determine that Officer Hall made a lawful traffic stop of Franklin's car and had probable cause to search the car for narcotics. We thus affirm the district court's decision on the motion to suppress.

### D. *Whether the district court denied Franklin his right to counsel at two hearings in which defense counsel moved to withdraw.*

Franklin argues that the district court denied him his right to counsel by not appointing a separate attorney to appear on his behalf at two hearings in which his defense counsel moved to withdraw. The first hearing occurred when Franklin's retained counsel, Linda Wagoner, made a motion to withdraw from her representation. The district court conducted a hearing on this motion on July 10, 2006, with only defense counsel and Franklin present. The district court granted the motion and appointed William Marsh from the Community Defender to represent Franklin. In October 2006, Franklin, through Marsh, requested that the district court appoint new

counsel, after Marsh refused to file a motion to suppress that Franklin had prepared. The district court denied the motion because the disagreement did not threaten Marsh's ability to serve as an effective advocate. Franklin's position is that at both hearings he was essentially forced to represent himself, and that the district court did not conduct an investigation into his competence to do that (Franklin cites *Faretta v. California*, 422 U.S. 806 (1975), on this point).

Franklin admits that there is no case defining a hearing on a defense counsel's motion to withdraw as a "critical stage" of the proceeding entitling a defendant to counsel. Before taking up the question of whether a withdrawal motion is a critical stage, it is worth noting that at no time was Franklin without counsel; when the district court held the first hearing on Wagoner's motion to withdraw, Wagoner was still serving as Franklin's counsel and was only allowed to withdraw *after* the hearing, at which point the district court gave Franklin a choice between having counsel appointed or hiring another attorney. Marsh *never* withdrew as Franklin's counsel. Thus, aside from the brief interval between Wagoner's withdrawal and Marsh's appointment that is not at issue here, Franklin had representation for the entire proceeding.

Franklin is apparently arguing that he was entitled to additional counsel to represent him at the hearings on his own defense counsel's motion to withdraw. Franklin cites no authority for this interpretation of his Sixth Amendment right to counsel. Nor, objectively, does a defense counsel's motion to withdraw qualify as a

critical stage of the proceedings for Sixth Amendment purposes, as the proceeding is simply not the sort of trial-like confrontation between the accused and the state that gives an accused a Sixth Amendment right to counsel (or, in this case, additional counsel). *See United States v. Ash*, 413 U.S. 300, 312 (1973) (reviewing the historical "expansion of the counsel guarantee to trial-like confrontations . . . "); *see also United States v. Jackson*, 886 F.2d 838, 843 (7th Cir. 1989) (critical stage is one where "absence of defense counsel or lack of advice may derogate from the accused's right to a fair trial."). Indeed, the attorneys for the government were asked to leave the courtroom during the hearing on Wagoner's motion to withdraw, and while the government was present for the colloquy on the motion regarding Marsh's appointment, the government was not involved in the discussion of that motion. Franklin had the assistance of counsel at all times in the proceeding below and was not entitled to additional counsel during the hearings on his own counsel's motion to withdraw. Accordingly, we find no denial of Franklin's Sixth Amendment rights during the proceedings below.

E.  *Whether the district court properly considered the scope of the search of Franklin's car in their motion to suppress.*

Franklin next argues that Hall's search of his car went beyond the scope of probable cause because smelling an odor of marijuana smoke would not give a police officer probable cause to search for drugs in the dashboard or

other compartments of the car. The factual support for this argument rests in large part on Franklin's claim that the police conducted multiple searches of his car, a claim that the district court heard and decided not to credit. The legal support for this claim is derived from a Tenth Circuit case in which that court held that a police officer would not have probable cause to search the trunk of a car simply because he smelled marijuana smoke in the passenger compartment. *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993). Franklin's only citation to a case in this circuit is to *United States v. Garcia*, 897 F.2d 1413, 1419 (7th Cir. 1990), a case that held that dismantling door panels could not be justified by consent to search but could be justified by probable cause (and was justified by probable cause, in that case).

In this case, the district court credited Hall's testimony that he smelled marijuana smoke in the passenger compartment of Franklin's car and that a drug-sniffing dog alerted to the presence of narcotics from outside the car. As discussed earlier, both would give the police probable cause to search the interior of the passenger compartment for drugs. This circuit has held that the search can go as far as probable cause extends, even into separate containers or the trunk of the car. *United States v. Ledford*, 218 F.3d 684, 688 (7th Cir. 2000) (citing *Wyoming v. Houghton*, 526 U.S. 295, 300-01 (1999) and *United States v. Ross*, 456 U.S. 798, 820-21 (1982)). In this case, the odor of marijuana would provide an officer with probable cause to search the passenger compartment and containers within the passenger compartment, and the police dog's alerting to the presence of narcotics would provide additional probable

cause to search for narcotics. Accordingly, the search here did not exceed the scope of probable cause, and we affirm the district court's ruling on this part of the suppression issue.

### F.  Whether the mandatory minimum sentences in 21 U.S.C. § 841 are constitutional.

Franklin next argues that the mandatory minimum sentences established by Congress in § 841 are an unconstitutional deprivation of his due process rights. He argues that the district court should have been free to depart from the mandatory minimum and consider the factors set forth in 18 U.S.C. § 3553 of the sentencing guidelines in imposing a lesser sentence.

This issue, as the government points out, was raised for the first time on appeal, and so is waived. But even assuming that Franklin can make this argument here, the Supreme Court and this court have consistently held that mandatory minimum sentences are not a violation of a defendant's due process rights. *Chapman v. United States*, 500 U.S. 453 (1991); *United States v. Velasco*, 953 F.2d 1457, 1476 (7th Cir. 1992). Franklin does not argue that his case qualifies under exception to the mandatory minimum sentence for persons offering "substantial assistance" during a police investigation, as set forth in § 3553(e). Nor does he qualify under the safety valve exception to the mandatory minimum set forth in § 3553(f), since, among other disqualifying factors, he possessed a firearm in connection with his drug trafficking offense. Accordingly, we affirm the sentence of the district court.

### G. Whether the defendant's prior felony drug conviction needed to be pleaded in the indictment and proven to a jury.

Franklin finally argues that the prior convictions presented to the court pursuant to 21 U.S.C. § 851 should have been alleged in the indictment and presented to the jury. He argues that this was the position of the Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and of Justice Thomas' concurring opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 499 (2000).

Again, this challenge to the indictment was not presented to the district court but assuming arguendo that Franklin can present it to this court, the Supreme Court's opinion in *Almendarez-Torres* specifically rejected the argument that a prior conviction triggering a mandatory minimum sentence is an element of an offense that must be proved to a jury. *Almendarez-Torres*, 523 U.S. at 247. Franklin correctly argues that Justice Thomas' concurring opinion in *Apprendi* treated a prior conviction as an element that a prosecutor must present to the jury, but this was not a majority opinion, and the opinion of the court holds that prior convictions need not be charged in an indictment or presented to a jury. *Apprendi*, 530 U.S. at 490. We affirm the district court's sentence in this case.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.