In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1938

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CALVIN WATSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-CR-140-C-01—**Barbara B. Crabb**, *Chief Judge*.

ARGUED JANUARY 27, 2009—DECIDED MARCH 12, 2009

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant appeals from his conviction for illegal possession of guns and ammunition, for which he was sentenced to six years in prison. The only question is the legality of the seizure of the weapons, which were essential evidence of his guilt.

A police officer received an anonymous tip that a black man was dealing guns out of the trunk of a maroon Dodge Intrepid driven by a white woman. The word "tip" is a misnomer, since the tipster, who claimed to have

actually witnessed the criminal activity, had talked to the police officer by phone for an hour, giving a wealth of detail about the car and its occupants. He refused to give his name on the ground that he feared retaliation by the criminal community (which, he said, had happened to him once before), but he gave his phone number and other information that would have made it a cinch for the police to identify him. The police located a maroon Dodge Intrepid driven by a white woman with a black male passenger (the defendant) and ordered the driver to stop, which she did. Six police officers approached the car with guns pointed at the occupants, whom they ordered to leave the car and walk backwards toward them. The driver consented to a search of the car, which the police knew from a computer check of the license plate was hers, and they found the weapons in the trunk.

Anonymous tips have often been held to be an insufficient basis by themselves for a finding of reasonable suspicion that would justify a stop. E.g., *Florida v. J.L.*, 529 U.S. 266 (2000); *United States v. Robinson*, 537 F.3d 798, 802 (7th Cir. 2008); *United States v. Brown*, 401 F.3d 588, 595-96 (4th Cir. 2005). But there is no flat rule that such a tip can never provide a valid basis for such a finding, especially since the fact that a tipster gives a name doesn't negate the possibility that the tip is anonymous; the name may be a fake. *United States v. Wooden*, 551 F.3d 647, 649 (7th Cir. 2008). The tip in this case, moreover, was only quasi-anonymous, since the police could easily have identified the tipster—and that is important. *Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir. 1995);

*United States v. Andrade,* 551 F.3d 103, 110 (1st Cir. 2008) (per curiam); *United States v. Casper*, 536 F.3d 409, 414-15 (5th Cir. 2008). A tip is less likely to be malicious or irresponsible if the tipster knows that the police can find him, *United States v. Kent*, 531 F.3d 642, 648-49 (8th Cir. 2008), though there is always the possibility that the identifying details are fake.

And the amount of detail the tipster gave the police, much of which they were able to corroborate, was evidence that the tipster had indeed seen the car and its occupants. See *United States v. Torres*, 534 F.3d 207, 210-11 (3d Cir. 2008). It remained conceivable that he could have fabricated his witnessing of gun dealing, but that was not so likely as to deprive the police of reasonable suspicion that the car contained weapons, see *United States v. Hicks*, 531 F.3d 555, 560-61 (7th Cir. 2008); *United States v. Vongkaysone*, 434 F.3d 68, 74 (1st Cir. 2006); *United States v. Johnson*, 364 F.3d 1185, 1191 (10th Cir. 2004); compare *United States v. Monteiro*, 447 F.3d 39, 46 (1st Cir. 2006)—as of course it did.

The icing on the cake is that the police did not stop the car until they observed a violation—the rear license plate was not illuminated, as state law required—which gave them a legal basis for stopping the car. That they would not have stopped it had they not suspected a more serious violation—as they obviously did, or they would not have approached with drawn and pointed guns—is of no moment. *Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001); *Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir.

2008); *United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008). And for further icing we note that the driver consented to the search, as she had every right to do because it was her car.

The defendant argues that even if the police could lawfully stop and lawfully search the car, they had no right to frighten him by pointing their guns at him. There are cases in which, although the police have every right to conduct a search or arrest a person or seize property, the manner in which they do so violates the Fourth Amendment. The usual case is that of the use of excessive physical force to effect an arrest. E.g., *Graham v. Connor*, 490 U.S. 386 (1989); *Walker v. Sheahan*, 526 F.3d 973, 978-79 (7th Cir. 2008); *Parker v. Gerrish*, 547 F.3d 1, 4-5 (1st Cir. 2008); *Gill v. Maciejewski*, 546 F.3d 557, 561 (8th Cir. 2008). But the "excess" might consist of threats that put the arrested (or stopped) person in fear of bodily harm. *Dorsey v. Barber*, 517 F.3d 389, 401-02 (6th Cir. 2008).

The defendant's case is weak; since the police had reasonable suspicion to think they were approaching an illegal seller of guns, who had guns in the car (and not necessarily just in the trunk of the car), they were entitled for their own protection to approach as they did. E.g., *United States v. Hensley*, 469 U.S. 221, 235 (1985); *United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005); *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004). But in any event, had they used excessive force his remedy would be a suit for damages under 42 U.S.C. § 1983 (or state law) rather than the exclusion from his criminal trial of evidence that had been seized in an

otherwise lawful search. Christopher Slobogin, "Why Liberals Should Chuck the Exclusionary Rule," 1999 *U. Ill. L. Rev*. 363, 401-02 (1999); cf. William J. Stuntz, "Privacy's Problem and the Law of Criminal Procedure," 93 *Mich. L. Rev*. 1016, 1072 (1995). As in *Hudson v. Michigan*, 547 U.S. 586 (2006), where the Supreme Court ruled that a violation of the rule that (where feasible) the police must "knock and announce" their presence before breaking into a house that they are authorized to search does not justify suppression of the evidence found in the (otherwise lawful) search, there is no causal connection between the manner in which the police approached the defendant in this case and the search of the car that disclosed the weapons used in evidence against him. Had they said or done nothing to him, drawn and pointed no guns, but merely asked the driver for consent to search the car, the evidence would have been discovered.

Even closer is *United States v. Ramirez*, 523 U.S. 65, 71 (1998), where we read that "excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and *the fruits of the search are not subject to suppression*" (emphasis added). We thus disagree with the dictum in *United States v. Ankeny*, 502 F.3d 829, 836 (9th Cir. 2007), which flies in the face of *Ramirez*, that the use of excessive force in the course of a search can require suppression of the evidence seized it.

This is not even a case of inevitable discovery, as where the police obtain evidence by means of an illegal

search but if they hadn't violated the law they would have obtained the evidence lawfully, and on that ground the evidence is admitted. E.g., *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Tejada*, 524 F.3d 809, 813-14 (7th Cir. 2008). There was no causal connection in this case between the alleged police conduct and the obtaining of the evidence that the defendant asks us to suppress. The police didn't obtain the evidence by pointing their guns at the defendant, but by obtaining the consent of the driver. And even if the police obtained her consent by intimidation (a question we need not and do not address), the defendant cannot object. He was just a passenger; he claims neither a property nor a possessory interest in the car, so even an illegal search of it would not have infringed *his* Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

Application of the exclusionary rule would be particularly gratuitous in this case because the defendant has an adequate remedy by way of a civil action—a remedy better calibrated to the actual harm done the defendant than the exclusionary rule would be. *United States v. Sims*, 553 F.3d 580, 583-84 (7th Cir. 2009). If he was frightened by police officers' using excessive force (the force wasn't excessive, but for completeness of analysis we are assuming for the moment that it was), a jury will assess the damages that are required to compensate him and deter the police from future such misconduct. To exclude the evidence on which his conviction was based would return a gun dealer to his life of crime, and the cost to society might well exceed the damages that a jury or judge would award him for his fright. In

short, when evidence is lawfully seized, police misconduct collateral to the seizure does not trigger the application of the exclusionary rule. For "the fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 129 S. Ct. 695, 700 (2009).

The judgment is therefore

AFFIRMED.