In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3648

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERMARIO TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-CR-20062-MPM-DGB—**Michael P. McCuskey**, *Chief Judge.*

ARGUED SEPTEMBER 15, 2009—DECIDED FEBRUARY 16, 2010

Before POSNER, FLAUM, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.*   In June 2007, Jermario Taylor
was charged in a one-count indictment with knowingly
possessing crack cocaine with intent to distribute it. The
charge stemmed from the discovery of crack cocaine in
his vehicle following a traffic stop. Taylor filed a motion
to quash his arrest and a motion to suppress evidence,
contending that the evidence was the result of an unrea-
sonable search and seizure in violation of the Fourth
Amendment. Following an evidentiary hearing, the court

denied the motions. Taylor then entered an open guilty plea to the charge, reserving his right to challenge on appeal the denials of the motions to quash and suppress. The court sentenced Taylor to 120 months' imprisonment, 8 years of supervised release, and a $100 special assessment. Taylor now appeals the district court's denial of those motions. Because Taylor does not raise any challenges to the fact findings on appeal, we rely on the facts as found by the district court.

The criminal charge arose from a traffic stop conducted on May 5, 2007. Special Agents Dustin Brown and Jeff Martin of the Kankakee Area Metropolitan Enforcement Group, a drug task force located in Kankakee County, were assigned to patrol the area. Taylor made a left turn in his GMC Yukon sport utility vehicle, that resulted in him driving directly in front of the agents in their patrol vehicle. The agents observed that Taylor was not wearing a seatbelt while driving the vehicle. Accordingly, they initiated a traffic stop.

Brown proceeded to the driver's door while Martin remained at the rear of the vehicle as the cover officer. Brown then asked Taylor for identification, and requested that he exit the vehicle. Brown also asked Taylor if he had any weapons, drugs, or illegal items on his person or in the vehicle. After Taylor responded in the negative, Brown asked Taylor for his consent to search the vehicle. Taylor asked if he was required to consent, and Brown responded that he was not required to do so, but that the agents would be walking a drug-sniffing canine around the exterior of the vehicle. Taylor then granted consent for a search of the vehicle.

While Brown stayed with Taylor, Martin then circled the vehicle with his drug detection canine. The canine alerted to the presence of narcotics on the driver's door handle. Martin then opened the door and the dog entered the vehicle, again alerting to the presence of narcotics at the driver's floor mat area. Martin lifted the floor mat, revealing a plastic bag containing crack cocaine. At that time, Brown placed Taylor under arrest. A subsequent search of Taylor yielded a plastic bag containing crack cocaine, and $300 in cash. After Taylor was brought to the police station he was issued a traffic citation for failure to wear a seatbelt.

On appeal, Taylor asserts that the traffic stop was merely a pretext for a drug investigation. He points out that the agents were part of the drug task force, and that their goal was to root out narcotics offenses. There is evidence to support Taylor's supposition. The agents were operating as members of the drug task force, and Agent Brown was familiar with Taylor from Brown's experience working as a guard at the Kankakee County Jail, although Brown testified that his recognition of Taylor had no bearing on his decision to stop Taylor for the seatbelt violation. The agents further acknowledged that they utilized the drug detection canine in all traffic stops "because they can"—in other words, because it is allowed by law. Taken as a whole, there is evidence that the officers were motivated in stopping Taylor by the desire to investigate a potential narcotics offense. Even if we agree with Taylor on that point, however, he is no closer to success on his Fourth Amendment claim.

The Fourth Amendment prohibits unreasonable searches and seizures. With the exception of limited circumstances such as administrative searches, certain roadside checkpoints, and a narrow class of drug testing, a search or seizure is ordinarily considered unreasonable absent individualized suspicion of wrongdoing. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). One such type of individualized suspicion occurs when police have probable cause to believe that a person had committed even a minor traffic offense. *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005); *Whren v. United States*, 517 U.S. 806, 810 (1996). The district court found that the agents viewed Taylor driving without his seatbelt, and Taylor has not challenged that factual finding on appeal. Accordingly, the initial stop of the vehicle and the questioning of Taylor were proper, as it was based on probable cause to believe that he had committed a traffic offense.

Even a proper traffic stop, however, can run afoul of the Fourth Amendment if the manner of executing the seizure unreasonably infringes interests protected by the Constitution. *Muriel*, 418 F.3d at 725; *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.*; *Muriel*, 418 F.3d at 725. There is no evidence that the stop in this case was unreasonably prolonged. The officers engaged immediately in the type of actions that are necessary to process a traffic offense, including requesting Taylor's identification. They asked him a few

questions, some of which were unrelated to the traffic stop, but that does not transform the stop into an unreasonable seizure. The Supreme Court has made clear that mere police questioning, even as to an unrelated area, does not itself constitute a seizure. *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005); *see also United States v. Childs*, 277 F.3d 947, 951-52 (7th Cir. 2002) (en banc). The Court in *Muehler* recognized that even when officers have no basis for suspecting a particular individual of criminal activity, they can generally ask questions of that person and request consent for a search. *Id.* at 101; *Muriel*, 418 F.3d at 726. Here, Taylor acknowledges that the length of detention was "admittedly fairly short." The agents spoke with Taylor only briefly before obtaining his consent to search the vehicle. And that is the proper focus, not the length of the detention as a whole (although there is no evidence that the incident as a whole was unreasonable in length either.) As we noted in *Muriel*, consent renders a subsequent search reasonable unless given involuntarily, and therefore the relevant focus in determining whether the seizure was reasonable in duration is the time between its initiation and the consent. *Muriel*, 418 F.3d at 725.

Taylor does not allege that the consent was itself involuntary. He does challenge the use of the drug-sniffing canine, and to the extent that the threat of the canine impacted his consent, his challenge bears on the consent as well. It is well-established, however, that the use of a drug-sniffing canine in the course of a traffic stop does not constitute a search, and therefore does not in itself violate the Fourth Amendment, although it may

impact the determination of whether a seizure is reasonable if the use of the dog causes a delay. Because the agents could properly use the dog to sniff around the vehicle, the statement that they would do so raises no constitutional problems. Taylor's challenge to the routine use of such dogs in traffic stops is better directed to the Supreme Court, which has repeatedly held that such use is not a search. *See Muehler*, 544 U.S. at 101; *Caballes*, 543 U.S. at 409; *Edmond*, 531 U.S. at 40. *See also United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008).

Ultimately, Taylor's argument is that the traffic stop was a pretext for a drug investigation, and that the primary objective is relevant in determining the reasonableness of a search and seizure. That argument has been repeatedly rejected by the Supreme Court. In *Whren v. United States*, 517 U.S. 806, 812-13 (1996), the Court addressed it directly:

> Not only have we never held, ouside the context of inventory search or administrative inspection . . ., that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary. In *United States v. Villamonte-Marquez*, 462 U.S. 579, 584, n. 3 (1983), we held that an otherwise valid warrantless boarding of a vessel by customs officials was not rendered invalid "because the customs officers were accompanied by a Louisiana state policeman, and were following an informant's tip that a vessel in the ship channel was thought to be carrying marihuana." We flatly dismissed the idea that an ulterior

motive might serve to strip the agents of their legal justification. In *United States v. Robinson*, 414 U.S. 218 (1973), we held that a traffic-violation arrest (of the sort here) would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search," *id.* at 221, n.1, . . . .

Taylor asserts that subsequent cases have called into question that holding, but he has failed to provide any indication of that, and in fact it has been reaffirmed many times. *See Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001) (quoting *Whren* that a motivation to search for narcotics does not invalidate a traffic-offense arrest, and that subjective motivations of the officers plays no role in the Fourth Amendment analysis); *Devenpeck v. Alford*, 543 U.S. 146, 154-55 (2004) (subjective intent of the arresting officer is no basis for invalidating an arrest). In fact, we have noted the continued viability of that holding. In *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008), we rejected a similar claim, noting the holdings in *Whren* and *Arkansas* that the motivation of the officers is not relevant, and stating that "the [Supreme] Court's recent Fourth Amendment jurisprudence offers observers little reason to believe that the justices wish to revisit this decision." In *United States v. Watson*, 558 F.3d 702, 704 (7th Cir. 2009), we similarly upheld a seizure where the subjective basis for the stop was unrelated to the traffic violation. In *Watson*, the police received a tip that the occupants of a vehicle were dealing guns out of the trunk, but the officers conducted the stop only after observing that the rear license plate was not illuminated as required by law. *Id.* at 703-04. We rejected any claim that the officers subjective motiva-

tions were relevant: "[t]hat they would not have stopped it had they not suspected a more serious violation—as they obviously did, or they would not have approached with drawn and pointed guns—is of no moment." Id. at 704, *citing Arkansas*, 532 U.S. at 771-72; *Whren*, 517 U.S. at 813; *Franklin*, 547 F.3d at 733; *United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008).

Under current Supreme Court law, then, the subjective motivations of the agents are irrelevant to the Fourth Amendment analysis. Because Taylor has presented no valid grounds for suppressing the evidence or quashing the arrest, the decision of the district court is AFFIRMED.