DIAZ, Circuit Judge,
dissenting:
Joseph Edwards was arrested pursuant to a valid warrant charging him with assault and handgun offenses, and searched incident to his arrest. The search did not result in public exposure of Edwards’ genitals or bodily intrusion, was witnessed only by male officers, and occurred prior to placing Edwards in a police van for transport. The majority opinion disputes none of these facts. Instead, it singles out as constitutionally unreasonable the use of a knife by an officer to remove a drug baggie strapped to Edwards’ penis, and discovered in plain view during an otherwise lawful search. I respectfully dissent — not to endorse the carte blanche use of a knife to remove contraband from a defendant’s *888 person — but because, on this record, I do not believe that use of the knife alone rendered the search unreasonable.
As the majority correctly notes, “[t]he test of reasonableness [with respect to a search] .... requires a balancing of the need for the particular search against the invasion of personal rights that the search entails,” Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In assessing this balance, courts are to consider (1) the place in which the search was conducted, (2) the scope of the particular intrusion, (3) the manner in which the search was conducted, and (4) the justification for initiating the search. Id. Applying Bell to the facts of this case, I would affirm the district court’s denial of the motion to suppress.
The majority opinion focuses on the first three Bell factors, assuming, without deciding, that the officers were justified in searching Edwards. As to this latter issue, the search occurred incident to Edwards’ arrest on a warrant stemming from an alleged domestic dispute earlier in the day. The alleged victim told police that Edwards pointed a firearm at her during the dispute, and the arrest warrant noted that Edwards was wanted on assault and handgun charges. Thus, as the district court concluded, officers searching Edwards had “reason to believe a weapon was involved, and there was a reason to want to make sure that there would be no safety issues before putting Mr. Edwards in the van.” Further, the district court noted that Detective Bailey was aware of Edwards’ prior drug record, thus suggesting that a more comprehensive search for contraband was in order. Based on the facts presented, I am satisfied that the officers were justified in initiating the search, and it seems that the majority agrees.
As to the first Bell factor — the location — the search regrettably was conducted on a public street and there is no gainsaying that it would have been better had the officers removed the defendant to the privacy of the nearby police van before peering into his waistband and partially exposing his pelvic area. The record, however, is silent as to whether others were present inside the van. But were the van occupied, conducting the search there may have exposed Edwards’ genitals to the occupants, resulting in a greater invasion of privacy. Nevertheless, the search unquestionably occurred in public, which I concede cuts in favor of the majority’s decision to reverse.
Turning to Bell’s consideration of the scope and manner of the search, I accept that the intrusion visited on Edwards meets the technical definition of a “strip search,” as the majority holds. This was not a case, however, where the defendant was forced to remove all of his clothing in full view of the public. Moreover, it is undisputed that Edwards’ pelvic area was exposed only to the male officers conducting the search. Thus, save for Detective Bailey’s decision to use the knife to remove the drug baggie tied to Edwards’ penis, it appears the majority would have little trouble affirming the district court’s determination that the search was reasonable.
I respectfully disagree that the use of a knife was unnecessarily dangerous, and thus that the search was unreasonable. My distinguished colleagues accept that “[s]ome physical contact is permissible, and indeed unavoidable, when police reach into a suspect’s pants to remove drugs the suspect has chosen to hide there,” United States v. Williams, 477 F.3d 974, 976 (8th Cir.2007), and I could not agree more.
Simply put, in assessing whether the police acted reasonably, we need not ignore Edwards’ decision to store drugs in a *889 rather unconventional location. Indeed, our cases recognize that context matters in assessing reasonableness under the Fourth Amendment, as we have upheld intrusive searches when justified by the circumstances. See United States v. Dorlouis, 107 F.3d 248, 256 (4th Cir.1997) (finding that officers did not conduct an “unconstitutional strip search” by placing the defendant in the jump seat of a police van and pulling down his trousers, where officers knew that a confidential informant had given the defendants $1,600 in marked money and the initial search did not disclose the money); United States v. Daniels, 323 Fed.Appx. 201, 207 (4th Cir.2009) (unpublished) (finding that officers acted reasonably in “pullfing] the waistband of defendant’s sweatpants outward approximately three inches and looking] straight down into his underwear with a flashlight ... without exposing [the defendant] to the public”); see also Jenkins v. State, 978 So.2d 116, 126-27 (Fla.2008) (upholding as reasonable a search incident to arrest where (1) the officers pulled the defendant’s boxer shorts away from his body, but did not remove his clothes, (2) there was no evidence that defendant’s genitals were exposed to the public, although the search took place at a gas station during business hours, and (3) in removing the drug baggie from the defendant’s buttocks, the officers did not touch the defendant, but only the baggie); State v. Smith, 342 N.C. 407, 464 S.E.2d 45 (1995) (upholding as reasonable the search of defendant’s underwear and the removal of crack cocaine from underneath defendant’s scrotum).
Peering inside Edwards’ waistband, officers saw a baggie tied around his penis that contained smaller baggies that, in turn, contained “a white rocklike substance.” At that point, the officers were entitled to seize the contraband discovered during a lawful search incident to arrest. See Williams, 477 F.3d at 976 (“While the potential for destruction of evidence is diminished when a suspect is in custody, it is not completely eliminated, and it was not unreasonable for the officers to assume the initiative by seizing the contraband....”); Jenkins, 978 So.2d at 128 (concluding that “the very limited intrusion into Jenkins’ clothing was clearly outweighed by the need for law enforcement to retrieve the contraband before it could be discarded or destroyed”).
That Edwards was handcuffed at the time does not negate the officers’ legitimate need to seize plainly visible contraband, as other courts have correctly determined. For example, the defendant in Jenkins was unquestionably handcuffed at the time of the search, 978 So.2d at 118, and the defendant in Williams was in custody, and thus presumably in handcuffs, at the time of the search, 477 F.3d at 975 (noting that officers “took Williams into custody, placed him in a squad car, and drove him several blocks to the police department’s Fourth Precinct building” before conducting the search).
The majority does not challenge the officers’ authority to seize visible contraband; rather, it faults the method used as unnecessarily dangerous. Based on the location of the contraband, however, there was simply no delicate way to seize it. As the government notes, the use of the knife “presumably permitted Detective Bailey to remove the contraband without actually touching the defendant’s penis (which would have been a greater intrusion on the defendant’s person) or uncuffing the defendant and allowing him to remove the baggie,” which would have posed a security risk for the officers. Appellee’s Br. 16 n. 5.
The majority does not suggest that the officers should have allowed Edwards to *890 remove the contraband himself. But while it posits certain alternatives for seizing it, I fail to see how the majority’s suggestions are any more reasonable than the method chosen by the officers. The first three suggestions — untying, removing, or tearing the baggie — would require that officers physically touch Edwards’ penis. In my view, however, a rule that directs officers to place them hands on a defendant’s genitals as a first option for seizing contraband in a baggie that the defendant has chosen to strap to his penis seems no more attractive than the careful use of a knife. The majority next suggests that officers should have arranged for blunt scissors to be brought to the scene to remove the baggie. But this assumes that the knife actually used was not blunt, whereas the record offers no evidence as to its characteristics. Finally, the majority’s catch-all suggestion that officers should have used “other non-dangerous means in any private, well-lit area,” Maj. Op. at 886, does not specify a method of removal, but instead relies on the location of the search — a Bell factor that the majority explicitly declines to adopt as a basis for its decision. Thus, while criticizing the officers’ use of the knife as unreasonable, the majority has failed to articulate a method of removal that is any more reasonable. On that issue, the majority is in good company, for even Edwards’ counsel conceded at oral argument that there was “no good option” for removal.
The majority notes that “in the absence of exigent circumstances, the right of the police to seize contraband from inside Edwards’ underwear did not give the officers license to employ a method creating a significant and unnecessary risk of injury.” Maj. Op. at 886. While this conclusion is unassailable, the record of the suppression hearing offers little information about the knife, the manner in which it was used to remove the contraband, or how long it took to accomplish the task.[1] The district court, moreover, made no mention of the knife in its ruling. This omission was not an oversight, but rather reflected the fact that the knife was not the focus of the parties’ evidentiary presentations.[2]
Based on this record, I fail to see how we can characterize the officers’ actions as unreasonable. The majority disagrees, but in doing so it surmises that there were better options available to the officers. Outside of moving Edwards to the police van before conducting the search, however, I am at a loss to suggest one. In any event, even if we might in the comfort of chambers “imagine some alternative means by which the objectives of the police might have been accomplished,” our retrospective ability to do so does not mean that the method chosen by the officers here was unreasonable. United States v. Sharpe, 470 U.S. 675, 686-87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
*891 In sum, I am unwilling to penalize the officers in this case for making the best of a difficult situation. Considering all of the circumstances, I would hold, as did the district court, that these officers acted reasonably in searching Edwards and removing the contraband found on his person.
A final point, albeit one not pressed by the government before the district court or on appeal: even if the majority is correct in its assessment that the method used to remove the contraband was constitutionally unreasonable, it is not clear that suppression is the proper remedy. As the Supreme Court has emphasized, “[s]uppression of evidence ... has always been our last resort, not our first impulse.” Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). For that reason, “[w]hether the exclusionary sanction is appropriately imposed in a particular case ... is an ‘issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.’ ” United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
In declining to expand the exclusionary rule to knock-and-announce violations, Hudson cautioned that “[exclusion may not be premised on the mere fact that a constitutional violation was a ‘but-for’ cause of obtaining evidence.” 547 U.S. at 592, 126 S.Ct. 2159. Moreover, because “but-for causality is ... a necessary, [but] not a sufficient, condition for suppression,” the exclusionary rule should not be applied in cases where the evidence “ ‘has been come at ... by means sufficiently distinguishable [from the illegality] to be purged of the primary taint.’ ” Id. (quoting Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Such attenuation can occur when the evidence lacks a causal connection to the illegality or “when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.” Id. at 593, 126 S.Ct. 2159. The Court further noted that “[q]uite apart from the requirement of unattenuated causation,” the exclusionary rule is only applied where its “ ‘deterrence benefits outweigh its substantial social costs.’ ” Id. at 594, 126 S.Ct. 2159 (quoting Penn. Bd. of Prob. and Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998)).[3] Although the Court rejected suppression as a remedy for knock-and-announce violations, it noted the availability of a civil action under 42 U.S.C. § 1983. Id. at 597, 126 S.Ct. 2159.
Post-Hudson, the Ninth Circuit in United States v. Ankeny, 502 F.3d 829 (9th Cir.2007), declined to apply the exclusionary remedy where officers had a valid warrant to search a home, but conducted the entry and search in a violent and destructive manner. Specifically, officers used flash-bang devices that resulted in severe burns to the defendant and thousands of dollars in property damage. Id. at 833 & n. 1. In moving for suppression of the evidence seized, the defendant argued that the force used by the police rendered the search unreasonable.
Noting that “[u]nnecessary destruction of property or use of excessive force can *892 render a search unreasonable,” the Ninth Circuit chose not to decide this preliminary question. Id. at 836. Instead, it concluded that suppression was not the appropriate remedy because “[t]he alleged Fourth Amendment violation and the discovery of the evidence lack the causal nexus that is required to invoke the exclusionary rule.” Id. at 837. .In other words, because the police had a valid search warrant, “even without” the questionable methods the search would have been conducted and the evidence discovered. Id. at 838. Finally, the court noted that a § 1983 remedy remained available. Id. n. 5.
Similarly, in United States v. Watson, 558 F.3d 702 (7th Cir.2009), the Seventh Circuit found the exclusionary remedy inappropriate where the defendant alleged that officers used excessive force during a stop. After receiving information that a male in a maroon Dodge Intrepid was selling weapons, officers identified the car and “approached ... with guns pointed at the occupants, whom they ordered to leave the car and walk backwards toward them.” Id. at 703. The female driver consented to a search of the car, which uncovered weapons. The male defendant sought suppression, contending that even if police had authority to stop him, they had “no right to frighten him by pointing their guns at him.” Id. at 704.
Citing Hudson, the court found “no causal connection” between the alleged violation and the search of the car. Id. Rather, “[h]ad [the police] said or done nothing to him, drawn and pointed no guns, but merely asked the driver for consent to search the car, the evidence would have been discovered.” Id. Thus, even if police used excessive force, the remedy would be a suit under “42 U.S.C. § 1983 (or state law) rather than the exclusion from his criminal trial of evidence that had been seized in an otherwise lawful search.” Id.
Hudson, Ankeny, and Watson cast doubt on whether exclusion is the appropriate remedy in this case, particularly if, as I understand it, the majority’s reasoning turns on the means employed to seize evidence discovered in plain view during an otherwise lawful search. As in Ankeny and Watson, had the officers not used what the majority perceives to be an unreasonable method to remove the drug baggie, they nevertheless would have discovered the contraband and (at some point) seized it in some other manner. Put simply, the plainly visible contraband was already discovered before the officers determined to use a knife to remove it. Thus, I question whether the record supports the causal connection that Hudson requires before resorting “to the massive remedy of suppressing evidence of guilt,” 547 U.S. at 599, 126 S.Ct. 2159.
Finally, I am skeptical about the deterrence value of the rule announced by the majority today, particularly given the lack of palatable options available to these officers on the bizarre facts presented. In advancing the propriety of the exclusionary rule, the majority notes that Detective Bailey testified that in nearly 50 percent of arrests, Baltimore City police officers conduct similar searches inside the defendants’ underwear. Even if we are willing to credit that statistic, it seems to me that exclusion would be appropriate only if the majority concluded that the officers lacked suspicion to search inside Edwards’ underwear or that the initial visual search was outside the bounds of the Fourth Amendment. That, however, would be a different opinion. What the majority does instead is single out the use of the knife to invalidate the search in toto. As to that narrow basis for the majority’s holding, however, there is simply no evidence in the record, *893 from Detective Bailey or otherwise, that officers routinely use a knife to remove contraband from a defendant’s person. Further, the majority assumes that use of the knife posed a significant risk of injury. Again, however, this assumption is not supported by the record and was not the focus of the suppression hearing. Thus, given the majority’s singular focus on the method of removal of plainly visible contraband, I question whether exclusion is warranted on these facts.
In any event, I need not resolve that issue because I am convinced that the officers acted reasonably. Accordingly, I dissent.

. The majority appears particularly critical of the officers’ decision not to use "the flashlight when Bailey removed the baggie containing the suspected drugs with his knifed” noting that the search took place at night in a dark area. Maj. Op. at 885. But that complaint overlooks the majority's earlier assertion, amply supported by the record, that a streetlight partially illuminated the area where the search was conducted. Id. at 881.

. The use of a knife to seize contraband was also of little constitutional moment in Partlow v. State, 199 Md.App. 624, 24 A.3d 122 (Md. Ct.Spec.App.2011). In finding that officers conducted a reasonable search incident to arrest where, after feeling an object during a pat-down, officers “pulled the underwear away from [defendant's] body and used a pocket knife to cut a small piece — ‘the size of a baseball maybe’ — out of the underwear to retrieve the item,” the court noted, but was not swayed by, the use of the knife. Id. at 126.

. The Court offered the following, not wholly dissimilar, example: "When, for example, a confessed suspect in the killing of a police officer, arrested (along with incriminating evidence) in a lawful warranted search, is subjected to physical abuse at the station house, would it seriously be suggested that the evidence must be excluded, since that is the only ‘effective deterrent?’ ” Hudson, 547 U.S. at 596, 126 S.Ct. 2159.