STATE of Wisconsin, Plaintiff-Respondent,

v.

Jonathan A. HERR, Defendant-Appellant.†

Court of Appeals

*No. 2012AP935–CR. Submitted on briefs January 10, 2013.
—Decided February 6, 2013.*

2013 WI App 37

(Also reported in 828 N.W.2d 896.)

† Petition for Review dismissed 3-13-2013

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Aneeq Ahmad* of *Kirk Obear* Attorney at Law, Sheboygan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J.  Jonathan A. Herr was charged with operating a motor vehicle while intoxicated (OWI) and attempting to flee or elude an officer, both as felonies. Herr pled guilty after the circuit court denied his motion to suppress evidence. Herr argued that suppression was necessary as police used unreasonable force during his arrest. As the alleged unreasonable force had no causal connection to the evidence sought to be suppressed, we affirm.

## BACKGROUND

¶ 2.  Shortly after 2:30 a.m. on August 19, 2011, an officer with the Elkhart Lake Police Department observed a tan pickup truck, later learned to be operated by Herr, exit a resort/bar area at a high rate of speed. The officer followed Herr's vehicle about one-quarter mile, during which time the officer saw Herr's vehicle drive on the wrong side of the road for about twenty to thirty yards before swinging erratically back into its own lane. The officer attempted to catch up to Herr's vehicle, which then accelerated so that the officer could not gain on it even as his squad car was traveling one hundred miles per hour. The officer activated his emergency lights and siren and attempted to stop Herr for speeding and for operating on the wrong side of the road.

¶ 3.  Herr did not stop and continued at speeds of up to eighty-five miles per hour for the next fifteen miles. During a twelve-minute chase, Herr blew through stop signs, weaved in his lane, crossed onto the gravel on the side of the road, and avoided a stop strip placed by a Sheboygan County sheriff's deputy by sliding to a stop and executing a 180–degree turn. Herr's vehicle was finally boxed in by law enforcement in a felony stop.

¶ 4.  With two squad cars behind Herr's stopped vehicle and two in front, officers drew their weapons

and ordered Herr to show his hands and exit his vehicle. Herr did not follow the command to get out of his vehicle and remained in his truck, where he attempted to light a cigarette during which time he "put his hands out of sight." An officer drew his taser and advised his fellow officers that he was "going to go nonlethal" in removing Herr from the vehicle. The officer opened the door of Herr's vehicle and deployed his taser on Herr for a five-second burst. The officer testified that he used his taser because he feared that the pursuit might continue as Herr had the opportunity to put the car back in gear and hit a squad car or an officer. The taser had its effect, and Herr was taken into custody.

¶ 5. Herr smelled strongly of intoxicants when he was taken from his vehicle, failed his field sobriety tests, and was arrested for OWI. A blood draw later showed that Herr had a blood alcohol concentration (BAC) of .299 percent. Herr was subsequently charged with felony OWI, felony operating with a prohibited BAC, felony eluding arrest, and misdemeanor operating after revocation. Herr filed a motion to suppress "any and all statements made by the defendant, the chemical test of the defendant's blood, and any other observations made by the arresting officer," on the grounds that the officer's use of the taser was unreasonable. Following an evidentiary hearing, the court denied Herr's motion based on a finding that there was "no causal connection" between the use of force and the evidence collected against Herr. The court made no findings related to whether the officer's deployment of the taser constituted an unreasonable use of force. Herr thereafter pled guilty to fifth-offense OWI and eluding arrest, both felonies. This appeal followed.

## STANDARD OF REVIEW

¶ 6. The grant or denial of a motion to suppress evidence based on alleged violations of the Fourth Amendment of the United States Constitution is reviewed under two prongs. *State v. Felix*, 2012 WI 36, ¶ 22, 339 Wis. 2d 670, 811 N.W.2d 775. A circuit court's findings of fact will be upheld unless they are clearly erroneous. *Id.* Whether those facts establish that police conduct violated a defendant's Fourth Amendment right to be free from unreasonable search or seizure is reviewed independently. *Id.*

## ANALYSIS

¶ 7. Herr alleges that unreasonable force was used by the officer during his arrest in violation of the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). Herr argues that the remedy for the unreasonable use of force is the suppression of all evidence thereafter obtained from him.

¶ 8. Evidence may be suppressed from admission at trial when it "is in some sense the product of ... illegal ... activity." *Felix*, 339 Wis. 2d 670, ¶ 30 (citation omitted; emphasis omitted). Not all illegal conduct triggers this so-called exclusionary rule. *Id.* "The penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve." *Hudson v. Michigan*, 547 U.S. 586, 593 (2006) (citation omitted). If the interests that were violated by the unlawful police conduct "have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." *Id.* at 594.

¶ 9. As Wisconsin's appellate courts have not yet addressed whether the exclusionary rule pertains to the excessive use of force, we look to persuasive federal law for guidance. Our answer is provided by the Seventh Circuit. In *United States v. Watson*, 558 F.3d 702 (7th Cir. 2009), the Seventh Circuit held that even if police use excessive force, a defendant's remedy is a suit for damages under 42 U.S.C. § 1983 (2012) or a state statute in conformity therewith, rather than exclusion of the evidence in the defendant's criminal trial. *Watson*, 558 F.3d at 704. *Watson* involved a defendant who argued that the evidence against him for illegal possession of guns and ammunition should be suppressed as it was uncovered after police used unreasonable force in surrounding his car, drawing their weapons, and ordering him to leave the vehicle. *Id.* at 703. The court found that suppression was not available as "there is no causal connection between the manner in which the police approached the defendant in this case and the search of the car that disclosed the weapons used in evidence against him." *Id.* at 704; *see also Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) ("[E]xcessive force in making an arrest or seizure is not a basis for the exclusion of evidence."). The vehicle still would have been searched and the evidence seized absent any use of force. *Watson*, 558 F.3d at 704.

¶ 10. Herr does not contest that the police had probable cause to stop his vehicle and place him under arrest for felony OWI and eluding arrest following a dangerous, high-speed chase through Sheboygan County. Herr does not argue that there is a causal relationship between the evidence he seeks to suppress and the officer's alleged use of unreasonable force, e.g., that he was tortured into making the statements that he made or in consenting to field sobriety tests and a blood draw. Instead, Herr contends that the evidence collected against him subsequent to his arrest should be

ruled inadmissible solely on the ground that police used excessive force in the manner with which they seized him.

¶ 11. As there is no causal relationship between the alleged use of unreasonable force and the evidence sought to be suppressed, Herr's suggested remedy would ill serve our legal system. Deterring police misconduct is an important goal, but not one that should necessarily be pursued at the expense of bringing criminals to justice. *See Felix*, 339 Wis. 2d 670, ¶ 39. The exclusionary rule is an extraordinary remedy that exacts "substantial social costs," including potentially releasing guilty and dangerous criminals into our communities and impairing the truth-seeking objectives of our legal system. *See Hudson*, 547 U.S. at 591. "Suppression of evidence . . . has always been our last resort, not our first impulse." *Id.* Even though the threat that evidence may be suppressed may deter some police officers from using unreasonable force in carrying out otherwise lawful seizures, "[t]he Fourth Amendment does not require courts to exclude all evidence or forgo prosecuting a defendant following unlawful police conduct." *Felix*, 339 Wis. 2d 670, ¶ 40. As the evidence Herr seeks to suppress was not causally related to the alleged use of unreasonable force,[1] we affirm the decision of the circuit court and Herr's conviction.

---

[1] The circuit court made no findings as to Herr's argument that the officer's deployment of the taser was unreasonable. While we do not decide the issue, our independent review of the record suggests that the use of the taser was most likely reasonable. Herr's actions in the moments leading up to his seizure reflected that he did not want to be taken into custody, would not follow lawful commands, and was willing to engage in dangerous and reckless behavior to elude his capture. Whether force used during a seizure is reasonable depends on the

*By the Court.*—Judgment affirmed.

individual circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This objective test is viewed from the perspective of a reasonable officer and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Given this standard, it appears likely that the nonlethal use of the taser was a reasonable use of force considering Herr's threat to the officers.