**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2695
_____

UNITED STATES OF AMERICA

v.

JAN MICHAEL EDMONDS,
                                   Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:12-cr-00070-001)
District Judge: Honorable Nora B. Fischer
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 10, 2015
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed:  April 15, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

    Appellant Jan Michael Edmonds entered a conditional plea of guilty to one count

of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Under the terms of the plea, Edmonds reserved the right to appeal: (1) the denial of his motion to suppress; and (2) his designation as an armed career criminal and resulting sentencing enhancement under 18 U.S.C. § 924(e). For the reasons discussed below, we will affirm the District Court's judgment of conviction and sentence.

I.

On the evening of January 15, 2012, Pittsburgh Police Officers Michael Flynn and Andrew Miller were patrolling the Homewood neighborhood in a marked police vehicle. Around 9:00 p.m., the officers observed a Jeep traveling on Monticello Street. Although they lacked a speed-timing device necessary to determine the vehicle's exact speed, they believed the Jeep was exceeding the 25-miles-per-hour speed limit for the area. The officers began to follow the vehicle, and shortly thereafter, Officer Miller observed the Jeep jerk to the left, cross over the opposing lane of traffic, and park facing the wrong way on a two-way street, contrary to Pennsylvania law. Within a matter of seconds, Officer Flynn activated the cruiser's lights and siren and pulled behind the Jeep to initiate a traffic stop.

As the officers were initiating the stop, the driver of the Jeep, Edmonds, exited the vehicle and fled on foot. The officers exited their cruiser and pursued Edmonds, who ignored multiple commands to stop and repeatedly reached for the waistband of his pants. Officer Miller caught up to Edmonds and tackled him from behind. Edmonds, now face-down on the ground with Officer Miller on his back, resisted the officer's efforts to place him in handcuffs and did not comply with the command to "show . . . his hands." (App.

2

at 117.) In an effort to induce compliance, Officer Miller punched Edmonds once in the left side of the face.

Officer Flynn then caught up with Officer Miller and the still-noncompliant Edmonds. Officer Flynn struck the muscular portion of Edmonds's legs three times with his baton before Edmonds submitted to the officers' orders and removed his hands from underneath his body. As Officer Miller handcuffed Edmonds, Officer Flynn "observed a large unnatural bulge" in the rear of Edmonds's pants. (*Id.* at 205.) Following a pat down search, Officer Flynn recovered a loaded .40 caliber Glock pistol. Additional officers soon arrived on the scene, one of whom performed a more thorough search and located an ammunition magazine with 21 additional rounds in Edmonds's front pocket.

After consulting with the National Criminal Information Center database, officers learned that the recovered pistol had been previously reported as stolen. Officers also determined that Edmonds's driving privileges had been suspended by the Commonwealth of Pennsylvania, and that he had prior felony convictions, which prevented him from legally possessing a firearm. As a result, Edmonds was arrested and charged with various state firearm and motor vehicle offenses.

A federal grand jury sitting in the Western District of Pennsylvania subsequently indicted Edmonds on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). Edmonds moved to suppress the handgun and ammunition recovered following the foot chase, claiming that the officers violated his

Fourth Amendment right to be free from unreasonable searches and seizures. After an evidentiary hearing, the District Court issued a thorough memorandum opinion denying Edmonds's motion to suppress. Thereafter, Edmonds pleaded guilty to the felon-in-possession charge pursuant to a plea agreement that preserved his right to appeal the denial of his motion to suppress and his presumptive armed-career-criminal designation for sentencing purposes.

At sentencing, the District Court concluded that Edmonds's six prior convictions for possession with intent to deliver a controlled substance under 35 Pa. Cons. Stat. § 780-113(a)(30) qualified as predicate "serious drug offenses" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Accordingly, the District Court classified Edmonds as an armed career criminal and imposed the mandatory minimum sentence of 15 years' imprisonment.[1] Edmonds timely appealed, raising the issues preserved by his conditional plea.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction

---

[1] The ACCA provides in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years[.]

18 U.S.C. § 924(e)(1).

4

under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a district court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over its application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). We exercise plenary review over a legal challenge to a district court's application of the ACCA. *United States v. Jones*, 332 F.3d 688, 690 (3d Cir. 2003).

III.

A.

The District Court found that Officers Flynn and Miller committed no Fourth Amendment violation when they attempted to conduct a traffic stop and subsequently pursued, apprehended, searched, and arrested the fleeing Edmonds. While Edmonds challenges this conclusion on appeal, we agree with the District Court and will address each stage of the encounter in turn.

Looking first to the propriety of the traffic stop, we note that "[a] police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). Here, the District Court credited Officer Miller's testimony that he observed the Jeep driven by Edmonds "jerk" to the left and cross over the opposing lane of traffic (contrary to the prohibition against "careless driving" in 75 Pa. Cons. Stat. § 3714(a)), and park facing the wrong way on a two-way street (in violation of 75 Pa. Cons. Stat. § 3354(a)). Thus, the District Court concluded

5

the traffic stop was justified by the officers' reasonable suspicion that these violations had occurred. We agree.[2]

The traffic stop quickly departed from the routine, however, as Edmonds exited the Jeep and fled on foot, ignoring the officers' contrary commands. The District Court correctly concluded that the officers were justified in chasing and tackling Edmonds under such circumstances. As we have explained, "flight from a lawful police traffic stop, where that flight prevented the police from discharging their duty of maintaining oversight and control over the traffic stop, provide[s] the officers with reasonable suspicion to stop [the suspect] for further investigation." *Bonner*, 363 F.3d at 218. Such was the case here.

We also conclude, as did the District Court, that the force used by the officers to apprehend and subdue Edmonds was reasonable. "In effectuating a valid stop, police officers are allowed to use a reasonable amount of force." *Id.* at 217 (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Here, after the fleeing Edmonds ignored repeated commands to stop, Officer Miller tackled him, a use of force we have approved before. *See id.* at 216-18 (reversing suppression of drugs recovered from a defendant who fled from a lawful traffic stop "despite repeated orders to stop, and . . . did not stop running

---

[2] The Government asserts that we need not consider the propriety of the initial traffic stop because Edmonds was not "seized" for Fourth Amendment purposes until he was tackled by Officer Miller. In light of our conclusion that the traffic stop was unambiguously justified, however, we will not address the Government's argument.

until he was tackled by [the pursuing officer]").  The officers were similarly justified in using reasonable force to compel Edmonds to remove his hands from underneath his body and submit to the officers' control.[3]

Finally, the officers' search and subsequent arrest of Edmonds were also proper. An officer may conduct a pat down of a suspect's outer clothing during the course of a lawful stop if the officer has reasonable suspicion to believe the individual is armed and dangerous. *United States v. Navedo*, 694 F.3d 463, 467-68 (3d Cir. 2012).  Here, the officers had reasonable suspicion that Edmonds was armed and dangerous—Officer Flynn observed a bulge in the rear of the pants of a man who had just unsuccessfully fled from a routine traffic stop and struggled with the pursuing officers.  A pat down soon confirmed the officers' suspicion that Edmonds was armed.  A search of law enforcement databases also determined that: (1) the firearm had been reported stolen; (2) Edmonds's driving privileges had been suspended by the Commonwealth of Pennsylvania; and (3) Edmonds had prior felony convictions, which prevented him from legally possessing a firearm.  Thus, the officers had the requisite probable cause to arrest Edmonds.

---

[3] Moreover, regardless of the amount of force used, the officers had reasonable suspicion to engage in a *Terry* stop and the gun would have been discovered.  Because there is no causal connection between the search and seizure and the force used, the exclusionary rule does not provide Edmonds a basis to obtain suppression. *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (explaining that "but-for causality" is a "necessary condition for suppression"); *United States v. Watson*, 558 F.3d 702, 704 (7th Cir. 2007) (holding that, where there was no causal connection between force used to execute a search and the search itself, the "remedy would be a suit for damages . . . rather than the exclusion . . . of evidence that had been seized in an otherwise lawful search").

In sum, the District Court properly rejected Edmonds's Fourth Amendment arguments and denied his motion to suppress.

## B.

Edmonds also contends the District Court erred in concluding that his prior convictions for possession with intent to deliver a controlled substance under 35 Pa. Cons. Stat. § 780-113(a)(30) qualified as predicate "serious drug offenses" under the ACCA. However, as Edmonds acknowledges, this argument is squarely foreclosed by our recent precedential decision in *United States v. Abbott*, 748 F.3d 154 (3d Cir. 2014). Because we are bound by this precedent, we need not address Edmonds's claim that *Abbott* was wrongly decided. *See United States v. Ausburn*, 502 F.3d 313, 315 n.1 (3d Cir. 2007); 3d Cir. I.O.P. 9.1 (2010) (a three-judge panel may not overrule the holding in a precedential opinion of a previous panel).

## IV.

For the aforementioned reasons, we will affirm the District Court's judgment of conviction and sentence, entered on April 23, 2014.